HUDSON TRUST COMPANY, Appellant, *v.* AMERICAN LINSEED COMPANY, Respondent.

First Department, January 16, 1920.

Corporations — negligence of officers signing certificates in blank — fradulent appropriation of such certificate by employee — liability of corporation to person who loans money on such certificate — nature of stock certificates — liability where one of two innocent persons must suffer by wrongful act of another.

Where the president and treasurer of a corporation signed their names to blank certificates of unissued stock and delivered them to the transfer clerk of the corporation who kept them in a vault which was left open

during business hours with the result that a clerk of the corporation employed to assist the transfer clerk abstracted a certificate from the stock book and filled in his own name as holder and forged the signature of a trust company which acted as registrar, there was negligence on the part of said officers chargeable to the corporation which is liable for damages suffered by a person who subsequently in good faith made a loan upon said certificate of stock which was permitted to remain outstanding for a period of time until the registrar, on presentation, refused to register the certificate.

As certificates of stock certify that the holder is entitled to a certain amount of stock which can be transferred on the books of the corporation in person or by attorney it is a notification to all persons interested that whoever in good faith buys the stock and presents to the corporation the certificate regularly assigned with power of attorney to transfer, is entitled to have the stock transferred to him. These representations are continuing representations upon which any person to whom the certificate is offered has the right to rely.

The owner of such stock certificate may transfer title by delivery with a blank power of attorney indorsed upon the certificate and signed by the shareholder named therein. Such delivery transfers the legal title to the shares as between the parties to the transfer and not a mere equitable right.

Under the circumstances aforesaid a jury may find the corporation negligent.

The signature of the registrar of the stock is not necessary to give validity to the certificate.

The holding aforesaid is based not upon estoppel, for the corporation may deny that such certificate is valid, but is based upon negligence making it possible for the certificate to be issued and come into the hands of an innocent third party.

It is no defense that the officers of the corporation trusted in the honesty of their clerks who had never before committed a similar act.

The rule that where one of two innocent persons must suffer by the wrongful act of another the one who placed it in the power of such person to do the wrong must bear the loss, applies to corporations as well as to natural persons.

PHILBIN and DOWLING, JJ., dissent, with opinion.

APPEAL by the plaintiff, Hudson Trust Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 6th day of February, 1919, dismissing the complaint at the close of plaintiff's case, and also from an order entered in said clerk's office on the 14th day of March, 1919, denying plaintiff's motion to set aside the dismissal of the complaint and for a new trial made upon the minutes.

*Victor E. Whitlock* of counsel [*Holm, Whitlock & Scarff,* attorneys], for the appellant.

*Alfred A. Gardner* of counsel [*Rounds, Hatch, Dillingham & Debevoise,* attorneys], for the respondent.

PAGE, J.:

The action was to recover from the defendant damages for the loss sustained by the plaintiff in making a loan upon a certificate of defendant's stock which was fraudulently issued and permitted to remain outstanding by reason of defendant's negligence.

The defendant was organized in December, 1908, with a capital stock of $33,500,000, equally divided into common and preferred, all of which had been issued at the times hereinafter mentioned. The first president was B. F. Miles, and the first treasurer was W. D. Douglas. Miles and Douglas signed their names to a large number of blank certificates of stock and delivered them to one Schuyler, who was employed as transfer clerk. Schuyler had his desk in a large room with other clerks, and the book with the signed certificates of stock, when not on his desk, was kept in a vault leading out of this room, the doors of which were kept open during business hours, and the contents were thus accessible to any of the employees. George W. Corwin until May 1, 1903, was in the employ of the defendant as a general clerk. He at times assisted Schuyler in the transfer of stock. Whether he at any time other than the one under consideration filled in the name of the certificate holder in a signed blank certificate does not appear from the evidence. At some time, however, while in the defendant's employ, Corwin abstracted from the stock certificate book a certificate of preferred stock of the defendant which had been theretofore signed by the president and treasurer, and filled it out, writing in the blanks his own name as the holder thereof and the number of shares, 100. The certificate had printed thereon the following: " Countersigned & Registered this day of     .  Central Trust Company of New York, Registrar, by     ."  Corwin filled in the date and wrote " John J. Smith, Asst. Secretary," after the word " by."  Some time

after the successors to Miles and Douglas had been elected, the then president suggested that the certificates which had been signed in blank by Miles and Douglas should be destroyed. This would appear to have been done by completely destroying the book which contained these certificates and without any examination to ascertain whether any of the certificates were missing from the book.    More than seven years after Corwin had ceased to be employed by the defendant, he negotiated a loan from the plaintiff for $1,500, offering as collateral security the stock certificate in suit.    The loan was duly made and the stock certificate pledged with the plaintiff as collateral, Corwin indorsing the same in blank.    Corwin had been a customer of and depositor with the plaintiff since one Holloway had been connected with the plaintiff, in 1908, and had been a depositor in the Mechanics and Traders' Bank, with which Holloway had been connected for a period of seven or eight years prior thereto.    The loan was renewed from time to time and the amount thereof increased to $2,000, and on November 6, 1913, the last renewal was evidenced by a promissory note payable on demand, with the usual form assigning the certificate in suit to the plaintiff as collateral, with a power of sale in case of a default in payment of the note.    Payment was thereafter demanded of Corwin, who made default in payment, and the stock was sold at public auction to one Jacobson, who sold it to a firm of brokers, Hirsch, Lilienthal & Co.    They in turn sold it to Foster & Adams, who presented it to the defendant for transfer to their firm name on December 19, 1914.    The defendant marked the certificate in suit " cancelled " and perforated the signatures of the president and treasurer.    The following day the defendant sent the certificate, thus canceled and perforated, with a new certificate issued to Foster & Adams, to the Central Trust Company for registration.    The latter company refused to countersign the new certificate or register the same, stating that the certificate in suit had never been issued and that they had no record of an outstanding certificate of that number, and that that number had apparently been canceled.    The purchase price was refunded by each of the transferrors and plaintiff repaid to Jacobson the money that he had paid and received back the certificate.    An assignment of Foster & Adams' claim against

the defendant was delivered to plaintiff prior to the commencement of the action. A demand for transfer was also made by the plaintiff upon the defendant on January 28, 1916. Upon refusal, this action was brought.

At the close of the plaintiff's case the defendant rested without offering evidence and moved to dismiss the complaint. This motion was granted. The plaintiff asked leave to go to the jury on the question of the defendant's negligence. This motion was denied. The plaintiff excepted to these adverse rulings and moved for a new trial, which was denied.

The judgment having been rendered dismissing the complaint, the plaintiff is entitled to the benefit of every fact that the jury could have found from· the evidence given, and to every legitimate inference · that is warranted by the proof. This disposition of a cause by the trial court is never warranted unless it appears that the plaintiff is not entitled to recover, after giving him the benefit of the most favorable view that a jury would be warranted in taking of the evidence. The plaintiff's theory with respect to the facts, so far as they are supported by the evidence, must be deemed to be established, and where inferences are to be drawn from the facts and circumstances not in themselves certain or incontrovertible, it is generally for the jury, and not for the court, to make the inference. (*McNally* v. *Phœnix Ins. Co.,* 137 N. Y. 389, 394; *Stuber* v. *McEntee,* 142 id. 200, 205.) This action is for damages incurred by the plaintiff by reason of the negligence of the defendant. If, therefore, the jury could find from the evidence that the loss sustained by the plaintiff was occasioned by negligence on the part of the defendant or its officers, the case should have been submitted to them.

Certificates of stock are not in form or character negotiable instruments, yet they approximate to them, and in many respects the same rules apply. By these instruments the company certifies that the shareholder is entitled to a certain amount of stock in the company, which can be transferred on the books of the corporation in person or by attorney, and not otherwise, upon the surrender of the certificate. This is a notification to all persons interested that whoever in good faith buys the stock and presents to the corporation the certificate regularly assigned, with power of attorney to transfer, is entitled

to have the stock transferred to him. (*Bank* v. *Lanier*, 11 Wall. 369, 377.) These representations are continuing representations, upon which any person to whom the certificate is offered has the right to rely. (*New York & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30, 69; *Holbrook* v. *N. J. Zinc Co.*, 57 id. 616, 622; *People's Trust Co.* v. *Smith*, 215 id. 488, 494.) The owner of the certificate may transfer his title by delivery of the certificate with a blank power of attorney indorsed thereupon signed by the shareholder named in the certificate. Such delivery transfers the legal title to the shares, as between the parties to the transfer, and not a mere equitable right. (*McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Knox* v. *Eden Musee Co.*, 148 id. 441, 454.) Because of these facts, certificates of stock are readily salable in the open market and pass from hand to hand. Large financial transactions are based upon them. They are available as collateral security for immediate loan. Hence they furnish a very desirable form of investment. Their ready transferability is of advantage to the corporation, as well as to the holder of the certificates. These facts are of common knowledge and of course were well known to the officers of the defendant. Therefore, when they signed certificates of stock they knew that, when issued, the company would be chargeable with the representations that the certificates imported, and that whoever dealt with the stock would be entitled, without further investigation, to rely upon the verity of those representations. The knowledge that others had the right to rely upon such representations and would rely thereupon charged them with a duty, to any who might have dealings with the stock, that is, to the public, to see to it, before the stock was given currency, that the representations were true. Instead of signing the certificate after the same was filled out to the owner, with the returned certificate before them, which would have shown the correctness of the representation, the president and treasurer, the two officers authorized to sign certificates, signed quantities of them in blank and delivered them to a clerk, giving him power to fill them in and deliver them, and to call to his assistance another clerk. The signed certificates were left in a vault open to any employee during business hours, or lying upon the desk of the transfer clerk, and these officers and the directors of

the company exercised no supervision over the issuance and made no investigation subsequent to issue to ascertain whether the delegated power was properly exercised.

Can it be said that from these facts a jury could not find negligence? The Supreme Court of Massachusetts, in a case not as strong as this, because in that the president alone signed in blank and delivered the certificates to the treasurer, who also was required to sign and who fraudulently issued the stock, said: " The agreed facts in both cases show gross carelessness on the part of the president in signing certificates in blank, and negligence on the part of the directors in not examining the books and discovering the fictitious transfers of stock made by Reed," the treasurer. (*Allen* v. *South Boston R. R.*, 150 Mass. 200, 202.) In the present case the signatures of both the officers who were authorized to sign the stock were genuine. Their signatures were all that was required by the by-laws of the company to give validity to the stock. The directors had by resolution voted " that the Central Trust Company of New York be appointed registrar of stock of this company." It was the usual course of dealing for the transfer clerk to send the new certificate with the surrendered certificate to the registrar for verification and registration, and the name of the registrar with a blank left for the signature of the officer of the registrar was printed upon the face of the stock certificate. It is conceded that this certificate in suit was not sent to the registrar and that the signature of such officer was forged. The signature of the registrar was not necessary to give validity to the stock certificate. The appointment of a registrar and the course of dealing was adopted by the company for its own protection, as a check against its own employees. The lack of that signature upon the certificate in itself would not render the certificate invalid. The subsequent holder for value would be charged with no duty to ascertain whether the signature of the registrar was genuine. He had the right to rely upon the representation in the certificate, attested by the genuine signatures of the duly authorized officers, that it had been executed with every formality necessary to make the person whose name appeared thereon as stockholder such in fact. The certificate states on its face, as do all such certificates, that it is transferable only upon the books of the company, and yet it has been

held without a dissent that such a provision is only for the protection of the company, and that the certificate may be transferred by delivery with a blank power of attorney indorsed thereon and signed by the stockholder named in the certificate.

The case of *Dollar Savings Fund & Trust Co.* v. *Pittsburgh Plate Glass Co.* (213 Penn. St. 307), relied upon by Mr. Justice PHILBIN, in my opinion is clearly distinguishable from the case at bar.    In that case the certificate expressly stated on its face that it would not be valid unless countersigned by the registrar. Therefore, the signature of the registrar was necessary to its validity, while, as we have above set forth, the genuine signature of each officer required to give validity to the certificate of stock of this defendant was present.    The most that can be said is, that the employment of a registrar was a fact to be taken into consideration by the jury in determining the question of defendant's negligence.

I do not base my opinion upon any theory of estoppel. The transfer agent or his assistant was not authorized to issue this certificate under the circumstances and in the manner of its issuance.    The defendant is not estopped to deny that it is a valid certificate of stock, nor could it be compelled to issue a new certificate for it.    My opinion is based upon this proposition, that by its careless method of dealing with its stock certificates, the defendant made it possible for this certificate to be issued, as it was, and for an innocent third party to be thereby injured; and it is liable to the third party for the damage thus sustained, although it may not be liable on the certificate as such.    It is no answer that the officers trusted in the honesty of their clerks, that these clerks had never before committed a similar act, and, therefore, that its possibility was not present in their minds.    Protection against the possibility of such frauds is provided in the requirement that the certificate should be signed by the president and treasurer. When these officers are negligent, and by reason thereof spurious stock is issued which causes loss to fall upon an innocent third party, the loss should fall upon the company, who selected the president and treasurer and authorized them to sign, and who chose the directors who failed to supervise the issue of stock or make any investigation concerning the

same, and who employed the clerk through whose fraud the stock was issued, rather than upon the innocent victim. This liability rests upon the two principles of law, well settled by authority and in harmony with natural justice: that where one of two innocent persons must suffer by the wrongful act of another, the one who placed it in the power of such person to do the wrong must bear the loss; and when one of two innocent persons must suffer a loss from the fraud of a third, the loss must be borne by him whose negligence enabled the third person to commit the fraud. The principles apply to corporations as well as to natural persons. This result is in harmony with the decisions of our own State and of other States. (*Allen* v. *South Boston R. R.*, 150 Mass. 200; *C., N. O. & T. P. Ry. Co.* v. *Citizens Nat. Bank*, 56 Ohio St. 351; *Nat. Bank of Webb City* v. *Newell-Morse Royalty Co.*, 259 Mo. 637; *Havens* v. *Bank of Tarboro*, 132 N. C. 214; *Green* v. *Caribou Oil Mining Co.*, 178 Pac. Rep. [Sup. Ct. Cal., Feb. 19, 1919] 950.)

The instant case is entirely different from *Knox* v. *Eden Musee Co.* (*supra*). In that case an employee abstracted surrendered certificates from the safe and negotiated loans upon them. The court held that this employee had no authority express or implied to issue stock certificates; that these certificates were placed in the safe by the president, and the employee was directed to cancel them; that the taking of these certificates from the custody of the company was a larceny, and he could give no better title to them than if they had been certificates of stock of other corporations owned by the company which he had stolen. The certificates in the instant case were delivered to the clerk to be issued. They were the regular form of certificates, signed by the officers whose signatures were necessary. When the blanks were filled and the stock issued, the public had the right to rely upon the representation that the stock was duly issued to the owner and that any one who loaned money upon its security, and on default sold it, would acquire and could give a good title thereto. Whether the manner of dealing with these certificates, under the circumstances disclosed by the evidence, was negligent was to be determined by the jury, and the case should have been submitted to it.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., and MERRELL, J., concur; DOWLING and PHILBIN, JJ., dissent.

PHILBIN, J. (dissenting):

The plaintiff sues to recover damages from the defendant because of its alleged negligence in so conducting itself as to permit the fraudulent issue of a certificate for 100 shares of defendant's preferred stock. The certificate was received by plaintiff as security for a loan in good faith in the regular and ordinary course of business. As plaintiff's complaint was dismissed on motion of the defendant at the close of the case, the plaintiff is now entitled to the benefit of the rule as to favorable inferences.

In September, 1910, one George W. Corwin applied to the plaintiff for a loan of $1,500, offering the certificate as security. The loan was made and later increased on the same collateral to $2,000. Corwin had been a customer of plaintiff for some years preceding September, 1910. On November 6, 1913, the note held by the plaintiff was further renewed by a demand note given by Corwin. Demand for payment was later made and refused. Thereafter on December 6, 1914, the collateral was sold at public auction to one Jacobson for a net sum of $2,017. The stock was transferred on December 19, 1914, and application was then made by the holders to have a new certificate issued to them. The old certificate was canceled by defendant and a new one made and sent by defendant to the Central Trust Company, the registrar, for counter-signature. The registrar refused to sign the certificate, stating that the canceled one had never been validly issued. The forgery of the signature of the registrar was then discovered. It is conceded that the signatures of defendant's officers on the certificate are genuine.

It appears that one Schuyler was at the head of defendant's transfer department as transfer agent from 1899 to August, 1901. His desk was in a large room in which fifteen or twenty persons worked, and among them was said Corwin. He was

a sort of general clerk, helping particularly in other departments. He was called upon by Schuyler at times to assist him in the transfer department. Corwin left the defendant some years before he pledged the certificate with the plaintiff. Schuyler as transfer agent had in his possession, while Corwin was so employed by defendant, a number of preferred stock certificates signed in blank by the president and treasurer. They were kept in bound books in a vault or upon Schuyler's desk when he was filling out certificates. The vault opened into the large room where Schuyler had his desk.

The numerous cases holding a corporation liable, where its certificates of stock have been issued fraudulently, are based on some form of estoppel. They may be divided generally into two classes: *First,* cases involving implied agency; *secondly,* those involving negligence. (*Knox* v. *Eden Musee Co.,* 148 N. Y. 441; 7 R. C. L. 218–220.)

If the plaintiff is entitled to recover in this case, it must be on the theory of negligence, because the evidence in the record does not justify a finding that Corwin had implied authority to issue certificates. It is true that, in a general way, he at times assisted Schuyler, the transfer agent, but there is no evidence that when Corwin did so he in any instance wrote in the name of a shareholder on a certificate of stock. In fact, the inference is to the contrary, and that the only time he did write a name on a certificate was when he wrote in his own name on the certificate involved in this action. Moreover, the plaintiff proceeded at the trial on the theory of negligence and the same attitude is taken on this appeal. At more than one place in plaintiff's brief it is specifically stated that the action is grounded in negligence. The gravamen of this action is tort and it was incumbent on the plaintiff to show that the defendant failed to perform some duty which it should have performed and that in consequence of the omission the plaintiff was damaged. It follows that the only question before the court on this appeal is whether the trial court erred in holding that the theory of action advanced by the plaintiff was not sustained by the proof.

Plaintiff asserts that defendant was negligent, *first,* in intrusting certificates, signed in blank by the president and the treasurer, to the transfer agent Schuyler and his assistant

Corwin; *secondly,* in failing to discover and advertise the theft of the certificate.

The first ground is untenable. Honesty is the general rule of human conduct. An employer may certainly deal with his employees on the assumption that they will be faithful in the performance of their duties. At least he may take that position, without the risk of being deemed negligent, until such time as the employee shows himself unworthy of confidence. And certainly no one is bound to assume that an employee will commit a willful and criminal act of forgery and larceny. If any authority be needed for such self-evident propositions, it may be found in *Knox* v. *Eden Musee Co.* (*supra*). In the case at bar there is no evidence connecting Schuyler with the fraud and no evidence that Corwin was guilty of more than the one transgression. In having the certificates signed in blank by the president and the treasurer, the defendant was following a practice customary with large corporations, as the plaintiff admits. The attendant risk is generally minimized by the device of having some outside agency countersign the certificates as registrar. In this case the Central Trust Company was employed. The face of the certificate carried a printed form of counter-signature with a blank for the name of an officer of the registrar. This was notice to the public that a counter-signature was necessary to give validity to the certificate, and was a step taken by the defendant as a protection against fraudulent issues. The situation is this: Is the defendant corporation liable on the theory of negligence where its certificates are required to be signed by three persons and where a certificate is signed in blank by two of those persons and then stolen by a clerk into whose custody it has come, the clerk not being authorized, expressly or impliedly, to fill in names of stockholders on the certificates or actually issue them? I am of the opinion that the answer must be in the negative. A search of the cases reveals but one directly in point. In *Dollar Savings Fund & Trust Co.* v. *Pittsburgh Plate Glass Co.* (213 Penn. St. 307) the court had before it a case on all fours with this, and the result reached was that the defendant corporation was not liable. There the certificate carried on its face an express declaration that the certificate would not be valid unless countersigned by

the registrar, but I think that the printing on the certificate now before this court of a form for the signature of an officer of the Central Trust Company was equally effective as a declaration of the necessity of a signature by the registrar. This Pennsylvania decision contains a dictum that until the plaintiff shows a certificate, to which are attached the genuine signatures of all the parties whose signatures are necessary to its validity, he is not entitled to enter the lists where the contest as to the negligence of the company is to be fought out. I am not prepared to go to such extreme. However, I believe that the result reached was sound and that the principle should be applied here.

The remaining specification of alleged negligence may be disposed of briefly. The failure to advertise the theft by Corwin is, of course, of no importance if defendant was under no duty to ascertain the fact of the theft by a checking up process. In 1899 the new president gave instructions to destroy all certificates bearing the signature of his predecessor. Plaintiff does not now claim that such instructions were not carried out. The inference is, that prior to such destruction, Corwin secretly abstracted the certificate in question. I do not think that there was negligence in not anticipating the theft and examining each certificate separately to see if any was missing. This point was also before the court in the Pennsylvania case, *supra*, and was decided adversely to the contention of the plaintiff.

The judgment and order should be affirmed, with costs.

Dowling, J., concurs.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.