WILLIAM J. EHRICH and Others, Copartners, Doing Business under the Firm Name of EHRICH & COMPANY, Appellants, v. GUARANTY TRUST COMPANY OF NEW YORK, Respondent, Impleaded with THE LACLEDE GAS LIGHT COMPANY, Defendant.

First Department, January 14, 1921.

Corporations — liability of transfer agent of corporation where certificates of stock duly sealed and signed but otherwise incomplete are stolen, forged and negotiated by one of its employees — negligence of transfer agent not proximate cause of injury — liability of company which had assumed liabilities of transfer agent after forgeries and had accepted one of forged certificates as collateral — presumption as to honesty of employee.

In an action for damages claimed to have been suffered by the plaintiffs by reason of the fact that ten certificates of shares of capital stock of a corporation were forgeries, it appeared that the transfer agent had possession of the certificate books of the corporation containing certificates of stock duly sealed with the corporate seal and signed by the proper officers with blanks for the name of the stockholder and for the signatures of the proper officers of the transfer agent and the registrar of transfer; that said certificates had engraved thereon: " This certificate is not valid until countersigned by the Transfer Agent and also by the Registrar of Transfers;" that a clerk in the employ of the transfer agent stole ten of the certificates from the back of the book, forged the names of the transfer agent and the registrar of transfers and inserted a fictitious name as the owner of the stock; that thereafter the defendant trust company became the transfer agent and assumed the liabilities as such of the former transfer agent; that thereafter said forged certificates were placed with the plaintiffs as collateral to a loan and that at least one certificate was used by the plaintiffs as collateral for a loan from the defendant trust company.

*Held,* that as the certificates were not complete at the time they were stolen and could only be made complete by the criminal act of · the employee forging the names thereto, the act of the transfer agent in leaving the stock book where the employee had access to it will not make the transfer agent or the defendant liable, as the forgery of the agent or employee and not the act of the transfer agent or the defendant was the proximate cause of the injury.

No liability of the defendant to the plaintiffs can be predicated on the fact that the defendant accepted one of the forged certificates as collateral to a loan by it to the plaintiffs.

An employer is not bound to assume that an employee, whom he had no reason to suspect of dishonesty, will or may commit a crime. On the contrary, the presumption is that he will do right and not wrong.

APPEAL by the plaintiffs, William J. Ehrich and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of November, 1918, upon the dismissal of the complaint by direction of the court at the close of the plaintiffs' case.

*Manfred W. Ehrich* of counsel [*Ehrich, Wheeler & Walter,* attorneys], for the appellants.

*William C. Cannon* of counsel [*Harold W. Bissell* with him on the brief; *Stetson, Jennings & Russell,* attorneys], for the respondent.

SMITH, J.:

The action is for damages claimed to have been suffered by the plaintiffs by reason of the fact that ten certificates of shares of the capital stock of the Laclede Gas Light Company were forgeries. Plaintiffs' claim is based on defendant's negligence.

In November, 1911, the Standard Trust Company of New York was the transfer agent for certificates of stock of the Laclede Gas Light Company, and as such agent had possession of the certificate books of that company containing certificates of stock duly sealed with the corporate seal and signed by the proper officers with blanks for the name of the stockholder and for the signatures of the proper officers of the transfer agent and the registrar of transfer. In October, 1912, the Guaranty Trust Company took over the Standard Trust

First Department, January, 1921.          [Vol. 194.

Company and assumed its liabilities and became the transfer agent of the gas light company. The Standard Trust Company had in its employ a boy named Charles A. Goodwin engaged in the transfer department to assist in the clerical work connected with the transfers of stock. He had come to the trust company with three letters of recommendation and had been in its employ for some months prior to the transactions hereinafter mentioned. There was no proof that he had ever been dishonest or that there was any reason to suspect his integrity.

In November, 1911, Goodwin tore from the back of the book of 100 share stock certificates of the Laclede Gas Light Company ten of those certificates with the stubs, there still remaining in the book some 200 prior numbered, unissued certificates. Goodwin in the course of his employment had access to the certificate books which were kept by the trust company in a large steel cabinet which was locked with a key and the key was kept in an unlocked drawer in the transfer department cage. That cage had a door with a snap lock for which the keys had been lost and the door left open at night. Goodwin had been working late, and so had an opportunity to abstract the above ten certificates without being observed. The trust company continued using certificates from the same book for a year or so after the theft, which was not discovered until some time after the trust company ceased using the book.

After taking the ten certificates as above, Goodwin forged the name of Wm. C. Cox, defendant's vice-president, to the countersignature of the Standard Trust Company and the name of the secretary of the registrar, the Central Trust Company, on each of the certificates. The name of Frank A. Weston was written in as the owner of the shares of stock and the certificates in that condition came into the hands of one George H. Lowden who used at least one of the certificates with brokers as collateral for a trading account. On December 6, 1912, Lowden opened an account with the plaintiffs in the name of F. A. Weston, using one of the 100-share certificates as collateral. At different times thereafter others of the above-mentioned certificates were used as collateral for the same account with the plaintiffs until on August 24, 1914, the plaintiffs held all ten of the forged certifi-

cates. All of this time these certificates had remained in the name of Frank A. Weston until the fall of 1914 when plaintiffs sent one of the certificates to the Guaranty Trust Company to have it transferred from the name of Frank A. Weston when it was first discovered that the ten certificates were forgeries and the Guaranty Trust Company first discovered that the certificates had been removed from the back of the certificate book. At this time the F. A. Weston account owed the plaintiffs some $79,000 for which the only security was these ten forged certificates.

In March, 1913, the plaintiffs, having a loan of $100,000 from the Guaranty Trust Company with certain securities as collateral, substituted in place of some of such securities one of the ten forged certificates and it was taken by the Guaranty Trust Company as security and so held until April 15, 1913, when the loan was paid and the securities received back by the plaintiffs.

The certificates in question had engraved thereon immediately before the witness clause the following words: " This certificate is not valid until countersigned by the Transfer Agent and also by the Registrar of Transfers."

The plaintiffs claim that on the facts proved the defendant is liable to them for their damage because their loss was the natural and direct result of the negligence of the Standard Trust Company in failing to safeguard the certificates and that at least a question of fact existed on the proofs as to whether the defendant's predecessor exercised proper care in that respect, which question should have been submitted to the jury.

These forged certificates when taken from the certificate book by Goodwin were not complete instruments. They had been sealed by the gas light company and signed by its proper officers. To make them completed instruments they still required the signatures of the transfer agent and the registrar of transfers. They never became completed instruments as those signatures were never affixed to them. The boy Goodwin had not authority to affix those signatures to the certificates and his act in so doing was a crime. This crime was the primary proximate cause of the plaintiffs' injury.

The case of *New York & N. H. R. R. Co.* v. *Schuyler* (34

N. Y. 30) discloses an entirely different state of facts.   Schuyler
was the president and also the transfer agent of the plaintiff.
He signed the certificates for the unauthorized stock as
president and as transfer agent during the same period he
was also signing certificates for authorized stock and he
entered all in the stock book.   There was no forgery and
nothing to indicate to any one that there was a difference
between the authorized and unauthorized certificates.   The
railroad was held to be bound by the acts of its agent and to
have been negligent in not discovering the improper acts for
a long period of years.

The case of *Bruff* v. *Mali* (36 N. Y. 200) was one where the
directors were sued for themselves overissuing stock of the
corporation.   They were naturally held liable and the case is
not in point.

In *Cutting* v. *Marlor* (78 N. Y. 454) the plaintiff sued to
recover on notes which the defendant had secured by the
deposit of certain securities with the bank of which the plaintiff
was receiver.   These securities had been stolen by the president
of the bank and the court held that the plaintiff could not
recover on the notes because the bank was liable to the
defendant for the theft of his securities.

In *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.* (106 N. Y.
195) a freight agent of the defendant had issued bills of lading
for certain goods which had not been received by the rail-
way.   The defendant was held liable for the acts of its
agent, and estopped from denying the facts recited in the
bills of lading.

The above are cases cited by the plaintiffs in support of
their contention that the defendant is liable, but the cases
seem to be not in point.   The other cases cited by plaintiffs
are equally inapplicable.   *Cleveland, etc., R. R. Co.* v. *Robbins*
(35 Ohio St. 483) was a case where the railroad had issued
some new certificates of stock to the record stockholder who
claimed to have lost the original certificates when, in reality,
he had sold and delivered them to another party.   The
railroad was held liable to the second party for the value
of the stock on the theory of carelessness in the reissue.
*C., N. O. & T. P. Ry. Co.* v. *Citizens' Nat. Bank* (56 Ohio St.
351) was a case where the president and secretary of the rail-

way duly executed the certificates and the seal of the railway was affixed. The secretary then filled in his own name and used the certificates. The court held that these certificates, complete as they were, executed and issued by officers authorized so to do, were the acts of the railway and further held that the act of the railway in permitting the president to sign and leave the certificates with the secretary, who by affixing his own signature and the seal of the railway and so issue them was guilty of negligence. The same distinguishing features will be found in all of the cases cited by the plaintiffs, and while some of the conclusions stated in the opinions in the above cases may be broad enough to cover a case like the one at bar, those conclusions must be limited by the facts in the several cases.

The case cited by the plaintiffs most nearly in point is *Hudson Trust Co.* v. *American Linseed Co.* (190 App. Div. 289). In that case the defendant was held liable where a clerk in its employ took a completed stock certificate from the book and forged the name of the registrar thereon and after many years used it as security and it came into the hands of an innocent purchaser. There appeared nowhere on the certificate that it needed to be countersigned by the registrar to give it life and the Appellate Division opinion comments on that fact as differentiating that case from the case of *Dollar Savings Fund & Trust Co.* v. *Pittsburgh Plate Glass Co.* (213 Penn. St. 307), where the stock certificate contained on its face words similar to the words above quoted as being on the face of the certificates in the case at bar. This decision in the *Hudson Trust Co.* case seems, therefore, to approve the proposition laid down in the *Dollar Savings Co.* case, that where the certificate on its face provided for the countersignature of some transferee or other agent to give validity to the certificate, it was not a completed instrument until so countersigned. In the *Dollar Savings Co.* case the court says: " All the cases show that it is only when a party holds a certificate, to which is attached the genuine signatures of the parties who must sign to make it good, that the question arises as to whether or not the company is liable to him because of negligence when the certificate is in fact false by reason of having been unproperly or fraudulently issued." In that case

a clerk abstracted a certificate of stock, which required the countersignature of the registrar to give it validity, and forged that countersignature and disposed of the certificate. The court held that the negligence of the defendant that made possible the forgery was not the proximate cause of plaintiff's injury, but that the proximate cause was plaintiff's failure to verify the signature.

An employer is not bound to assume that an employee, whom he has no reason to suspect of dishonesty, will or may commit a crime. On the contrary, the presumption is that he will do right and not wrong. (See *Knox* v. *Eden Musee Americain Co.*, 17 App. Div. 365; *National Exchange Bank* v. *Lester*, 194 N. Y. 461; *People's Trust Co.* v. *Smith*, 215 id. 488.)

To constitute actionable negligence the injury must be the natural consequence of the alleged negligent act or one which might reasonably have been anticipated. The neglect must be in the transaction itself and be the proximate cause of leading the party into the mistake. (*Knox* v. *Eden Musee Co.*, 148 N. Y. 441; *Swan* v. *N. B. Australasian Co.*, 2 Hurl. & C. 181.)

Where an instrument complete in all particulars except those which an agent or employee is authorized to complete is intrusted to that employee or left where an employee has access to it, the owner will be held liable for the acts of the agent or employee, in issuing the same, but where the instrument is not complete and can only be made complete by the criminal act of the employee, the act of the owner in so intrusting or placing the instrument will not make him liable, as the forgery of the agent or employee and not the act of the owner is the proximate cause of the injury. (*Dollar Savings Fund & Trust Co.* v. *Pittsburgh Plate Glass Co.*, 213 Penn. St. 307; *Manhattan Life Ins. Co.* v. *F. S. S. & G. S. F. R. R. Co.*, 139 N. Y. 146; *Hill* v. *Jewett Pub. Co.*, 154 Mass. 172.)

Within the authorities cited the Standard Trust Company was not negligent in its care of the certificate in question, and if negligent, such negligence was not the proximate cause of the injury to the plaintiffs.

No liability of the defendant to the plaintiffs can be predicated on the fact that the defendant accepted one of the forged certificates as collateral to a loan by it to the plaintiffs.

That certificate came into possession of the defendant under a guaranty by the plaintiffs or what amounted to a guaranty of the genuineness of the certificate and no circumstances were shown that could in any way amount to a warranty by the defendant.

These conclusions lead to an affirmance of the judgment appealed from.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Judgment affirmed, with costs.