CALEDONIAN INSURANCE COMPANY OF EDINBURGH, SCOTLAND, Appellant, *v.* THE NATIONAL CITY BANK OF NEW YORK, Respondent.

First Department, February 8, 1924.

Bills and notes — action against indorsee of draft to recover amount on theory that payee's indorsement was forged and indorsee did not have title — draft was drawn by plaintiff on itself in favor of named person in payment of alleged fire loss, and was regular on its face — claim for fire loss was fraudulently presented by plaintiff's agents after fraudulent certification by plaintiff's adjuster — agents indorsed payee's name — draft cannot be considered as drawn to fictitious person, and, therefore, payable to bearer under Negotiable Instruments Law, § 28 — fraudulent act of adjuster was not proximate cause of indorsee's taking draft — negligence by plaintiff cannot be based on fraudulent acts of agents who had not prior thereto been guilty of dishonesty — drawer is not estopped from disputing existence of payee and capacity to indorse — plaintiff is entitled to recover.

The drawee of a draft drawn by itself is entitled to recover the amount paid to the indorsee, a bank, on the theory that the payee's indorsement on the draft was forged, and that, therefore, the indorsee did not have title to the draft where it appears that the draft was drawn payable to a named person in settlement of an alleged fire loss fraudulently presented to the drawee by its agents, and fraudulently certified by the drawee's insurance adjuster, the policy having been issued to a non-existing person, and no fire having occurred, and where it appears that the name of the payee in the draft was indorsed on the back thereof by the plaintiff's agents.

The draft cannot be considered as having been drawn to a fictitious or non-existing person and, therefore, payable to bearer under section 28 of the Negotiable Instruments Law, since the drawer intended it to be issued to a particular person named in the draft who was supposed by the drawer to be a person actually existing.

The fraudulent act of the adjuster, employed by the drawee to adjust the loss and certify to same, in certifying the existence of the loss, was not the proximate cause of the taking of the draft by the indorsee.

Negligence by the drawee, which would have absolved the defendant from liability, cannot be predicated on the fraudulent acts of the drawee's agents, since it appears that they had not prior to the transaction in question been guilty of dishonesty to the knowledge of the drawee.

The drawer of a draft is not estopped from disputing the existence of the payee and his capacity to indorse.

APPEAL by the plaintiff, Caledonian Insurance Company of Edinburgh, Scotland, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on or about the 5th day of July, 1923, denying the plaintiff's motion to strike out the answer and for summary judgment.

*Patterson, Eagle, Greenough & Day [Carroll G. Walter* of counsel; *Edward J. Patterson* with him on the brief], for the appellant.

*Shearman & Sterling [Joseph M. Hartfield* of counsel; *Vermont Hatch* with him on the brief], for the respondent.

MARTIN, J.:

Plaintiff seeks to recover the amount paid to defendant as the indorsee of a draft, asserting that the payee's indorsement was forged. Defendant guaranteed prior indorsements.

On July 9, 1921, plaintiff drew a draft upon itself for the sum of $1,500 payable to one M. H. Minor. It recites upon its face that it was in full settlement of all claims under plaintiff's policy No. 3084064, issued at Hopkinsville, Ky., on account of a fire which occurred there June 18, 1921. It further recites that " in consideration of said payment the policy is hereby cancelled and surrendered; " and that the policy be attached to the draft. It was sent by mail to plaintiff's Hopkinsville agency for delivery to the insured.

On or about July 13, 1921, this draft was presented to and paid by plaintiff, who had drawn it, at which time it was inspected and found to be in order for payment; and, presumably, it was accompanied by the surrendered policy.

The draft bore what purported to be the indorsement of M. H. Minor, as well as the indorsements of B. O. McReynolds, Planters Bank and Trust Company, and the National City Bank of New York, the defendant here.

This action was brought on the theory that the indorsement of the payee was forged, and that defendant, the National City Bank, had no title to the instrument. From the moving affidavits and the affidavit submitted in opposition to the motion it appears that plaintiff's agency in Hopkinsville, Ky., was in the hands of T. J. McReynolds and B. O. McReynolds. On June 3, 1921, through this Hopkinsville agency, plaintiff issued a policy of insurance in favor of M. H. Minor, stated to be of that place, on property therein described. The total amount of this policy was $1,500.

Approximately thirty days after, proof of loss for the entire amount covered was submitted under this policy. This proof of loss was apparently sworn to by M. H. Minor before Benj. O. McReynolds as a notary public on June 29, 1921, twenty-six days after the writing of the policy. The fire was reported to have taken place within fifteen days after the policy was issued.

The plaintiff employed an insurance adjuster in Kentucky who certified the loss and who was paid by plaintiff for his services.

On his report plaintiff issued the draft in question and sent it to B. O. McReynolds' concern in Hopkinsville. This draft, apparently indorsed by M. H. Minor and actually indorsed by B. O. McReynolds, was cashed by the Planters Bank and Trust Company, and was ultimately paid to defendant by plaintiff.

Subsequent to the whole transaction above described it was found that there never was any such person as M. H. Minor; that no such property as plaintiff's policy No. 3084064 purported to cover ever existed; that there had been no fire, no loss and no valid claim on plaintiff; and that the whole transaction was a fraud concocted and carried out by plaintiff's agent, B. O. McReynolds.

Though the plaintiff has now discovered the irregularities of its Hopkinsville agent, it leaves wholly unexplained the certificate of the insurance adjuster, Lindsay, its agent in this transaction.

The main point raised at Special Term was as to whether or not the draft was to be considered as payable to a fictitious or non-existing person so as to make it payable to bearer under section 28 of the Negotiable Instruments Law. That point was determined in plaintiff's favor, but the motion for judgment nevertheless was denied because the justice at Special Term thought that the defendant might be able to " prove such negligence as would work an estoppel as against the plaintiff." (120 Misc. Rep. 804.)

We agree with the decision of the court at Special Term that the draft should not be found to have been payable to bearer upon the theory that it was issued to a fictitious and non-existing person. The insurance company intended it to be issued to a particular person known as M. H. Minor, thought to be a person who had an insurable interest in a dwelling and furniture at Hopkinsville, Ky.

The opinion at Special Term upon reargument says that under the circumstances here " defendant should have an opportunity to develop any facts to support his [its] defense of negligence," emphasis being placed upon " the peculiar circumstances of the case " and on " the apparent lack of knowledge upon the part of the plaintiff of its agent's or representative's acts." (N. Y. L. J. April 27, 1923.)

It is asserted in respondent's brief that the draft with the canceled policy constituted a representation, to an indorsee of the draft, that plaintiff had insured by its policy property belonging to M. H. Minor; that a fire had occurred, and that the draft was to pay the insured for the loss covered by the policy. Defendant insists that, assuming the policy was attached to the draft, we have a situation quite different from that existing in the ordinary case where a draft is transferred with a forged indorsement.

Defendant also urges very strongly the fact that the adjuster who certified the loss was employed by plaintiff.

On the other hand, plaintiff asserts that the act of the adjuster, Lindsay, in certifying the loss was unrelated to and was not the proximate cause of defendant's act in taking the draft; that it does not appear that defendant or the bank which indorsed and transferred the draft to defendant knew that the adjuster, Lindsay, had been employed or that he had given any certificate; that plaintiff might have paid the loss without any adjustment, and that plaintiff employed the adjuster to protect itself and not because of any duty it owed to the indorsee of the draft.

We think plaintiff is correct in its argument with reference to the adjuster. If there had been no adjuster employed this fraud could just as readily have been consummated by the agent at Hopkinsville, Ky. The employment of the adjuster by plaintiff was a step taken for plaintiff's protection. Plaintiff owed no duty to defendant to employ the adjuster, and it cannot be said that defendant was entitled to believe that the payee's indorsement was *bona fide* by the fact that plaintiff employed an adjuster who falsely certified to the correctness of the loss. The policy is no more effective as a representation that there was a person named M. H. Minor than the draft alone would have been.

Plaintiff was defrauded by its agent at Hopkinsville, Ky., apparently with the help of the adjuster whom it employed. But it was not negligent because it dealt in regular course with somebody at a distant place as its agent, or because it employed an adjuster and relied on his honesty.

In *Hudson Trust Co.* v. *American Linseed Co.* (232 N. Y. 350; 190 App. Div. 289), PHILBIN, J., in a dissenting opinion, expressing the views which finally prevailed, said: " An employer may certainly deal with his employees on the assumption that they will be faithful in the performance of their duties. At least he may take that position, without the risk of being deemed negligent, until such time as the employee shows himself unworthy of confidence. And certainly no one is bound to assume that an employee will commit a willful and criminal act of forgery and larceny." *Ehrich* v. *Guaranty Trust Co.* (194 App. Div. 658; affd., 233 N. Y. 637) is to the same effect.

The drawer of a draft is not estopped from disputing the existence of the payee and his capacity to indorse. In *United Cigar Stores Co.* v. *American Raw Silk Co., Inc.* (184 App. Div. 217) the drawer intended the payee to be Parks for whom Peterson said he was soliciting contributions. There was no such person as Lieut. R. L. Parks.

The draft is drawn by the drawer on itself. In this connection it does not make any difference that the drawer and drawee were the same.

The questions here are: (a) Did defendant have title; and, if it did not have title, (b) has defendant's position been brought about or contributed to by negligence on the part of plaintiff.

The cases have no application which hold that a depositor may not recover from his bank when he has been negligent in performing his duty of examining and verifying his account from the vouchers, passbook or statement. They depend upon the relationship between the depositor and the bank.

In the case of *Hartford* v. *Greenwich Bank* (157 App. Div. 448), relied upon by respondent, Rypinski had adopted the name of Wilson and the checks were intended for the person called Wilson, who was actually Rypinski. He was the person who indorsed them so that there was no forgery. In the opinion of SCOTT, J., it is said (at p. 451): " There was an actual person, calling himself James Wilson, although that was not his real name, and it was that person to whom the tea company intended its checks should be paid."

Upon the facts set forth in the pleadings and moving papers, we are of the opinion that plaintiff was entitled to judgment. The order should, therefore, be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., DOWLING, FINCH and MCAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.