MARYLAND CASUALTY COMPANY, Plaintiff and Appellee, *v.* BANCO POPULAR DE PUERTO RICO, Defendant and Appellant.

No. R-64-8.        Decided May 10, 1965.

*Gabriel de la Haba, Rafael Baragaño, Jr., Garrard Harris, Ramón Mellado González, Rafael J. Baragaño Amadeo,* and *Eduardo C. Baragaño Amadeo* for appellant. *Rivera Zayas, Rivera Cestero & Rúa,* and *Francisco Agrait Oliveras* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The facts of this case were submitted to the trial court on a stipulation approved by both parties. The stipulation is an elaborate document. What follows is a summary of its content.

Plaintiff is a foreign corporation authorized to do insurance business in Puerto Rico. Defendant is a domestic bank. During the period from July 1, 1959 to June 30, 1960, the Government of the Capital carried a current account in defendant Bank. A bond was in force during that period, plaintiff being the insurer and the Government of the Capital the insured, to be liable to the latter for any loss sustained as a result of embezzlement, forgery, or misappropriation of funds by an action or omission of its employees.

Jaime Rijos Cruz was Assistant Subauditor of the Capital and in charge of preparing the payrolls. During the aforesaid period Rijos Cruz "prepared false payrolls including therein the names of nonexistent persons, and sent them to the Treasurer and Auditor of the Capital of Puerto Rico, José S. García and José Rodríguez Olmo, who on the basis of the prepared payrolls, without knowledge of the action of the said Assistant Subauditor, Jaime Rijos Cruz, and

without knowledge that the payrolls were false, issued and signed in representation of the Government of the Capital of Puerto Rico, as officers authorized therefor, 24 checks in favor of nonexistent persons in the total sum $7,002 on the account of the Government of the Capital of Puerto Rico in the principal office of defendant Bank."

Rijos Cruz fraudulently endorsed 23 of those checks writing on the back thereof the names of the nonexistent payees, and cashed them in the Banco Popular. He endorsed the remaining check in like manner and delivered it to a business firm in San Juan. Defendant Banco Popular charged the 24 checks to the account of the Government of the Capital. It charged the first two checks in July 1959 and the remaining 22 checks during the following consecutive months, which were the last checks charged in June 1960. The Bank sent monthly statements of account and the cancelled checks to the Government of the Capital. The Municipal Treasurer is charged with the duty of examining the monthly statements of account sent by the banks.

The Capital did not notify the Bank of any objection to the charges made in its account respecting such checks. The first claim made to the Bank for the amount of the checks was made by plaintiff on September 10, 1962. Subsequently plaintiff paid the Government of the Capital the amount of the checks, thereby subrogating itself to the rights of the Government of the Capital against defendant. Defendant has refused to pay to the Government of the Capital and to plaintiff the sum of $7,002 object of this suit. Here ends the summary of the stipulation.

The insurance company sued defendant Banco Popular for recovery of the aforementioned sum, plus interest, costs, and attorney's fees.

The Superior Court made the following conclusions of law summed up here: (1) The law provides that a check is payable to bearer when it is payable to the order of a

fictitious or nonexistent person, and that fact was known to the maker. (2) The fictitious-payee doctrine is not applicable to the facts of this case because the persons who issued the checks in the name of the municipality did not know that they were payable to the order of fictitious or nonexistent persons. (3) A depositor is bound to notify the bank of the existence of false endorsements as soon as he discovers them, but the fact that the bank sends to the depositor monthly statements of account and the cancelled checks does not establish the presumption that the depositor discovered or could have discovered that the endorsements were false. (4) The defense of prescription raised by the Bank is without merit. (5) Since plaintiff subrogated itself to the rights of the Government of the Capital, the former is entitled to reimbursement by defendant of the sum of $7,002 which it paid to the municipality.

In consonance with those conclusions, the trial court ordered defendant to pay to plaintiff the sum of $7,002, plus costs. Defendant-appellant urges reversal of the Superior Court on the following grounds:

1. Because the depositor was negligent in failing to discover and notify the bank promptly of the charges made to its account as a result of the checks in question.

2. Because according to the Negotiable Instruments Act, such checks must be considered checks payable to bearer, and, therefore, the bank acted correctly in honoring them.

3. Because the action has prescribed as to all the checks honored prior to November 9, 1959.

■ We shall discuss the errors assigned inversely to the order in which they are copied above. Defendant alleges that the action has prescribed as to all the checks honored prior to November 9, 1959. It argues that § 946 of the Code of Commerce, 10 L.P.R.A. § 1908, and not § 1864 of the Civil Code, 31 L.P.R.A. § 5294, is applicable. A similar contention was already decided adversely to defendant in *Portilla*

v. *Banco Popular*, 75 P.R.R. 94, 118–21 (1953). There we said that the action in these cases does not arise from bills of exchange, nor from checks, nor from other instruments of exchange, but that it is an action for collection of money based on a loan contract (the current account) and on a relationship of creditor and debtor. On these points, see *Portilla, supra* at 106–07. Also, Vance, Insurance 786 *et seq.* (3d ed.); Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño* 206 *et seq.* (1964); Annotation, *"Right of third persons to be subrogated to depositor's claim against bank on account of the latter's payment of forged or raised checks,"* 77 A.L.R. 1057; Annotation, *"Right of surety who discharges obligation due to government, to be subrogated to rights of latter against third persons,"* 24 A.L.R. 1523. In some American jurisdictions legislation has been enacted fixing a specific period of prescription in these cases. This may be understood since in the absence of supplementary law (contrary to the situation in jurisdictions where we have the Civil Code) it was necessary to fix some prescriptive period. See, to the effect, the Annotation *"Construction and effect of statute relieving bank from liability to depositor for payment of forged or raised check unless within specified time after return of voucher representing payment he notifies bank as to forgery or raising,"* 50 A.L.R.2d 1115. The error assigned was not committed.

The second contention made by appellant consists, as we have seen, in maintaining that the checks should be considered payable to bearer and that the bank therefore acted correctly in paying them. It invokes § 362 of the Code of Commerce, 19 L.P.R.A. § 10, which is in turn § 10 of our Negotiable Instruments Act (Sess. Laws, p. 176). That section in its pertinent part reads as follows:

"10. The instrument is payable to bearer . . .
(3) When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable."

That provision, which is taken from § 9(3) of the Uniform Negotiable Instruments Act, 5 U.L.A. § 9(3), adopted the fictitious-payee rule of the Anglo-Saxon common law.[1] That rule stemmed from a series of English cases of the 18th century which arose out of the bankruptcy of two business firms.[2] In *Minet* v. *Gibson, supra,* n. 2, which is the best known of the three original cases since it was the first on this matter to reach the House of Lords, it was held that since the instrument there in litigation was payable to non-existent persons and such fact was known to the drawer and to the acceptor, the instrument should be deemed payable to bearer. The reasoning was that since the fictitious character of the payee was known to both parties, the intention could be none other than that the instrument be considered payable to bearer. Later, in *Bennet* v. *Farnell*, 1 Camp. 130, 170 Eng. Rep. 902 (K.B. 1807), it was held that an instrument made payable to a fictitious payee was void unless the acceptor knew that the payee was fictitious, thereby definitively imposing that condition upon the said doctrine. However, when the Bills of Exchange Act of 1882 was enacted in England, the doctrine was enlarged to provide in § 7(3) that "where the payee is a fictitious or nonexistent person, the bill may be considered payable to bearer." The requirement that the fictitious character of the payee had to be known to the acceptor was therefore eliminated. It was so held by the House of Lords in the known case of *Bank of England* v. *Vagliano Bros.*, A.C. 107 (1891). The English fictitious-payee doctrine was incorporated early into the American jurisprudence, *Foster* v. *Shattuck*, 2 N.H. 446, 447 (1822), and became part of the United States mercantile

---

[1] Since in Puerto Rico there are two great occidental laws, the Continental European civil and the Anglo-American, we must distinguish frequently between the Anglo-American common law and the Spanish law. Juridical science, like all sciences, requires accuracy.

[2] *Tatlock* v. *Harris*, 3 T.R. 174 (1789); *Vere* v. *Lewis*, 3 T.R. 182 (1789); *Minet* v. *Gibson*, 3 T.R. 482 (1789); *cf.* 1 H. Bl. 569 (1791).

law long before the Uniform Negotiable Instruments Act was drafted. Holden, The History of Negotiable Instruments In English Law 146 *et seq.* (1955); Britton, Bills and Notes 425 *et seq.* (2d ed. 1961); Lloyd Magruder, *The Fictitious Payee Doctrine Under the Negotiable Instruments Law,* 17 La. L. Rev. 457 (1957); Brown, Negotiable Instruments—Liability of Bank to Depositor-Fictitious Payee, 32 Tul. L. Rev. 133 (1957); Chalmers, *Vagliano's Case,* 7 Law Q. Rev. 216 (1891).

The Uniform Negotiable Instruments Act was drafted and enacted in 1896 by the National Conference of Commissioners on Uniform Laws. It governs in practically all the states of the Union and in Puerto Rico. More than 20 states have replaced it by the Uniform Code of Commerce of 1952.[3] The Uniform Act, and hence our own statute, added an element to the fictitious-payee rule which the English statute did not contain (Bills of Exchange Act), but which the ancient common law did contain; namely, that the fact that the payee is fictitious or nonexistent should be known to the drawer of the instrument.

■ The fictitious-payee doctrine and the legal provision embracing it cover an anomalous situation. The exchange law classifies negotiable instruments into two great categories—to bearer and to order—and by virtue of such doctrine and legal provision an instrument which on its face is payable to order becomes, by fiction of law, payable to

---

[3] Santa-Pinter, *Objetivos del Uniform Commercial Code,* XXXV *Revista de Derecho Mercantil,* No. 88 (Madrid, 1963). For other works on the matter by Professor Santa-Pinter, see *Código de Comercio de Puerto Rico* (Barcelona, 1963); *Responsabilidad de las partes en el derecho puertorriqueño de los instrumentos negociables,* Revista de Derecho Español y Americano, April–June 1964, p. 59 (Madrid); *Negociación y Transferencia de los Instrumentos Negociables en el Derecho Puertorriqueño,* Boletín del Instituto de Derecho Comparado de México January–April 1964, p. 83; *La Letra de Cambio en Puerto Rico,* Revista de Derecho Mercantil, January–March 1964, p. 35 (Madrid).

bearer. The juridical importance of this distinction lies in the legal consequences which the law attributes to the instrument respecting its negotiation. As is known, the law provides that an instrument payable to bearer may be negotiated by its mere delivery, while if such instrument is payable to order, a valid endorsement of the holder is necessary, in addition to the delivery, in order that the transferee may acquire valid title thereto.[4]

Since in order that an instrument issued to the order of a fictitious or nonexistent person may be treated as issued to bearer the law requires that such character of the payee be known to the drawer, it is natural that the determination of who was the drawer or whether the drawer knew that the payee was fictitious or nonexistent always be key factors in these cases. When the drawer is a natural person, no problem as a rule arises once such person is identified. However, when the instrument is issued by a juridical person, the matter may become complicated since in those cases it is common for several natural persons (employees or officers of the juridical person) to intervene in a series of steps leading to the preparation of the instrument, and even in the preparation of the instrument itself. For example, in the case of checks issued in payment for personal services the situation may be this: a person supplies the names of the employees to be paid; another, on the basis of such information, prepares the payrolls; another prepares the checks inserting the names and the amounts; and another signs them.

In the case at bar Jaime Rijos Cruz "prepared false payrolls including therein the names of nonexistent persons and passed them to the Treasurer and Auditor of the Capital of Puerto Rico, José S. García and José Rodríguez Olmo, who on the basis of the payrolls prepared, without knowledge of

---

[4] 19 L.P.R.A. § 61.

the action of the said Assistant Subauditor, Jaime Rijos Cruz, and without knowledge that the payrolls were false, issued and signed the checks in question in representation of the Government of the Capital of Puerto Rico, as officers authorized to do so."[5] As a result of that situation, the following questions arise: Who was the person that under the law issued the checks? Did the person issuing them know that the payees were nonexistent?

In the case of juridical persons, two "persons" intervene closely in the issuing process. One is the nominal maker, that is, the institution or corporation which theoretically issues the instrument and which is responsible for its payment. The other is the actual maker, that is, the natural person, the human being, who actually signs the instrument. Of course, usually the actual maker is an employee or officer of the juridical person (nominal maker), and such actual maker is as a general rule authorized to sign, in the name of the nominal maker, the checks or instruments concerned.

■ The American jurisprudence has produced several rules in relation to cases involving makers who are juridical persons. One of these rules is the one known as the Kentucky rule or actual-maker rule, in which case "the person making it so payable"[6] is the human being who actually signed the instrument rather than the juridical person whom the former represents. According to this rule, in order that the instrument issued in the name of a fictitious or nonexistent person be deemed payable to bearer, it is necessary that the actual maker know that the payee is fictitious or nonexistent. It is also required that the actual maker be duly authorized to sign the check or instrument for the juridical person who

---

[5] Fourth paragraph of the stipulation.

[6] That is the phrase employed in the statute. In English: "the person making it so payable." In Spanish it was sufficient to say "the person who issued it."

is the nominal maker. The leading case of this rule is *Muller & Martin* v. *Liberty Ins. Bank*, 218 S.W. 465 (1920).

Another jurisprudential rule on this point is that known as the Missouri rule or formal or nominal-maker rule. According to this rule, "the person making it so payable" is the institution or juridical person responsible for the issuance of the instrument and not the human being (the actual maker) who in effect signed the same. As under the former rule, it is also required that the actual maker be duly authorized to sign for the nominal maker and to have knowledge of the fictitious or nonexistent nature of the payee. Under this rule, the knowledge of the actual maker that the payee is a fictitious or nonexistent person is imputable to the nominal maker. *American Sash & Door Co.* v. *Commerce Trust Co.*, 56 S.W.2d 1034 (1932); *Globe Indemnity Co.* v. *First Nat'l Bank*, 133 S.W.2d 1066 (1939).

A third class of cases of this nature turns on the concept of agency.[7] *Goodyear Rubber Co.* v. *Wells Fargo Bank*, 37 P.2d 483 (1934). For discussions on the rule just mentioned, see Note, 12 Sw. L.J. 250 (1958); Note, 4 Baylor L. Rev. 356 (1952); Note, 5 Mo. L. Rev. 514 (1940); Annotation, 118 A.L.R. 15, 36; Annotation, 74 A.L.R. 822, 823. As may be seen, both under the Kentucky rule (or of the actual maker) and the Missouri rule (or of the nominal maker), if the person who signed the instrument was authorized to sign and if she had knowledge that the payee was fictitious or nonexistent, the result is the same: the instrument is considered payable to bearer. However, the decisions have drawn a clear distinction between those cases in which the agent or employee had authority to sign the instrument in the name of his principal and those in which he had none.

---

[7] For a commentary on these terms, see II-2 Puig Brutau, *Fundamentos de Derecho Civil* 361 (1956).

■ It may be considered as a general rule that where the employee or agent has authority to execute the instrument and does execute it, knowingly, payable to a fictitious or nonexistent payee, such instrument is considered payable to bearer. Consequently, the acceptor who pays it is protected. Conversely, if the agent or employee has no authority to execute such instruments, the same are not considered payable to bearer. Therefore, in these cases the acceptor does not acquire title and the employer or principal may recover the sum involved in the absence of estoppel or negligence on his part. Britton, *op. cit.* at 429 *et seq.*; Bailey, The Law of Bank Checks 535 *et seq.* (3d ed. 1962); Note, 4 Baylor L. Rev. 356, 358–59; Annotation, 74 A.L.R. 822, 823; Annotation, 118 A.L.R. 15, 38.

This Court recently held in *Employers Mutual Liability Ins. Co.* v. *Banco Popular*, 91 P.R.R. 626 (1965), that certain checks which the treasurer of a cooperative, who had authority to sign them, made in the name of several members of the cooperative and which he afterwards fraudulently endorsed and cashed, were checks payable to bearer. It should be noted, in passing, that in this case the payees were not nonexistent because they existed as persons, but were fictitious because they had no interest in those checks. Their names were used merely as part of the maker's scheme. There may be cases in which the payees are nonexistent and, hence, fictitious.

The case at bar is different from that of *Employers Mutual Liability Ins. Co., supra*, since the officers of the Government of the Capital who signed the checks—for which they had authority—did not know that they were payable in the name of nonexistent payees. Rijos Cruz, who prepared the false payrolls, knew it, but he was neither an actual nor a nominal maker. The actual makers, the Treasurer and the Auditor of the Government of the Capital, had no knowledge of the fraud, nor did the nominal maker, the Government of

the Capital. Hence, there was no intention or knowledge in the actual makers imputable to the nominal maker. As we have said before, the decisions are uniform on this. The leading case of *American Sash & Door Co., supra,* is the same as the case at bar. An employee of that firm prepared false payrolls, and the court did not accept the defense that the checks were payable to bearer, which defense was predicated on the fact that they were issued to the order of fictitious persons, since the maker had no intention of making them so payable. Neither under the actual-maker rule (Kentucky), nor under the nominal rule (Missouri), nor under the rule of agency, may the nominal maker be held liable in the case at bar. See, also, *Defiance Lumber Co.* v. *Bank of California,* 41 P.2d 135 (1935); *City of New York* v. *Bronx County Trust Co.,* 184 N.E. 495 (1933); *United Cold Storage Co.* v. *Central Mfg. Dist. Bank,* 175 N.E. 825 (1931); *C. E. Erickson Co.* v. *Iowa Nat. Bank,* 230 N.W. 342 (1930); *United Motor Car Co.* v. *Mortgage & Securities Co.,* 128 So. 307 (1930); *Kaszab* v. *Greenebaum Sons' Bank & T. Co.,* 262 Ill. App. 107 (1929); *Caledonian Ins. Co.* v. *National City Bank,* 203 N.Y. Supp. 32 (1924); *Fletcher American Nat. Bank* v. *Crescent Paper Co.,* 139 N.E. 664 (1923); *National Union Fire Ins. Co.* v. *Mellon National Bank,* 119 Atl. 910 (1923); *City of St. Paul* v. *Merchants Nat. Bank,* 187 N.W. 516 (1922); *Los Angeles Investment Co.* v. *Home Savings Bank,* 192 Pac. 293 (1919); *National Surety Co.* v. *Nat. City Bank,* 172 N.Y. Supp. 413 (1916); *North British & Merc. Ins. Co.* v. *Merchants' Nat. Bank,* 146 N.Y. Supp. 720 (1914); *Jordan Marsh Co.* v. *Nat. Shawmut Bank,* 87 N.E. 740 (1909); *Shipman* v. *Bank of State of N.Y.,* 27 N.E. 371 (1891); Note, 25 Calif. L. Rev. 616; Annotation, 74 A.L.R. 822, Supp. in 118 A.L.R. 15; Annotation, 99 A.L.R. 439.

■ The third and last error assigned by defendant-appellant is to the effect that the depositor was negligent in

failing to discover and to notify the bank promptly of the charges made to its account as a result of the checks in question. We notice offhand that the case at bar is different from that of *Portilla* v. *Banco Popular, supra.* In *Portilla* the employee made false checks forging his employer's signature. Although it is true that the bank is charged with knowledge of the depositors' signatures, 75 P.R.R. at 107, it is also true that the depositors should know their own signatures. Hence, it is to be expected that from an examination of the cancelled checks the depositors should be able, normally and except in extraordinary circumstances, to discover forgeries of their signatures and report the fact promptly to the bank. However, in the case at bar the signatures of the two makers were not forged. The forgeries consisted in the false endorsements made by Rijos Cruz. It is easy to understand that a depositor has no control over the number of endorsements his checks will receive, nor has any means to detect, upon receipt of the cancelled checks, whether those endorsements are genuine or false. Many times the endorsements are to the depositor merely unknown names. As a rule, the courts are agreed that the depositor's duty does not extend to an examination of the genuineness of the endorsements on the checks. *Fultz* v. *First National Bank*, 33 U.S. L.Week 2461 (1965) ; *Mars* v. *Massanutten Bank of Strasburg*, 285 F.2d 158 (1960) ; *Coffin* v. *Fidelity-Philadelphia Trust Co.*, 97 A.2d 857 (1953) ; *Wormhoudt Lumber Co.* v. *Union Bank*, 2 N.W.2d 267 (1942) ; *National Surety Co.* v. *President and Directors of Manhattan Co.*, 169 N.E. 372 (1929) ; *Harlem Co-Operative Bldg. & Loan Ass'n* v. *Mercantile Trust Co.*, 31 N.Y. Supp. 790 (1895) ; *Shipman* v. *Bank of State of N.Y.*, 27 N.E. 371 (1891) ; Britton, Bills and Notes 407 *et seq.* (2d ed. 1961) ; Annotation, 39 A.L.R.2d 641, 655–56; Annotation, 103 A.L.R. 1147, 1151–54; Annotation, 99 A.L.R. 439, 450; Annotation, 67 A.L.R. 1121, 1125–26; Annotation,

15 A.L.R. 159, 166–68; Note, 13 Tul. L. Rev. 300, 302 (1939); Chalmers, *Vagliano's Case*, 7 Law Q. Rev. 216, 222 (1891).

The errors assigned were not committed. The judgment rendered in this case on December 9, 1963, by the Superior Court, San Juan Part, will be affirmed.