The Manufacturers' Bank of Cohoes, Plaintiff, *v.*
The Prudential Insurance Company of America,
Defendant.

(Supreme Court, Albany Special Term, January, 1918.)

Banks — payment of check where indorsement of payee's name was a
    forgery — maker not liable to bank in action for money had and
    received.

The assistant superintendent of defendant, an industrial
insurance company, by means of forged proofs of death of
certain of its policy holders, received from it for delivery to
the payees therein named checks payable to the respective
claimants. He forged an indorsement of the payee's name on
each of the checks and upon his indorsement of them as assistant
superintendent the amount of the checks was credited by the
plaintiff bank to his personal account and he used the money
for his own purposes. In an action by the bank to recover
from the insurance company the amount of said checks, as for
money had and received by it from plaintiff, it did not appear
that defendant ever received any of the proceeds of said checks
from the assistant superintendent. *Held,* that plaintiff was
chargeable with reasonable diligence to see that the signatures
were not forgeries.

That there was no duty resting upon defendant to look for
forged indorsements of the names of the payees of the checks
or to compare the indorsements thereon with the genuine signa-
tures on file in its office.

That defendant was entitled to judgment dismissing the
complaint.

Action to recover for money had and received.

Edgar T. Brackett (William E. Bennett and Edgar
T. Brackett, of counsel), for plaintiff.

Fellows & McElwain (James Guest, on the brief),
for defendant.

Rudd, J.   The plaintiff brings this action to recover $5,541.57 for money had and received by the defendant from the plaintiff.

The facts from which this action arises tell an interesting story of successful criminal acts on the part of Ira J. Bayliss, who succeeded in stealing during a period from December, 1906, to February 18, 1908, from the plaintiff the sum of money for which this action is brought.

Bayliss was the assistant superintendent in the city of Cohoes of the defendant insurance company.   He placed industrial insurance, collected premiums and in the case of the death of the insured policy holders his duties required him to secure the proofs of death, forwarding such proofs to the defendant at its home office in New Jersey, for which proofs in due time checks in payment of the claims would be sent to him to deliver to the respective beneficiaries under the policies.

During the period mentioned, between December 29, 1906, and February 18, 1908, the company received 106,250 sets of proofs of death of persons insured, coming from all parts of the United States and Canada.   The company also received over 100,000 claims for general obligations which were paid by check.   Checks in number amounting to 206,250 were mailed to its agents in different parts of the United States and Canada, of which 106,250, payable to claimants, were sent to assistant superintendents for delivery to the claimants in payment of death claims.

Bayliss presented to the plaintiff during the period in question, on nineteen different occasions, checks drawn by the defendant, all of which checks were cashed by the plaintiff and the amount of the checks, aggregating $5,541.57, was credited by the plaintiff bank to the personal account of Bayliss.   The bank sometimes paid part of each check to him in cash and

at other times gave him credit for the full amount thereof.

Each one of these nineteen checks bore a forged indorsement made by Bayliss of the payee's name.

The plaintiff now holds and owns these checks and seeks to recover the aggregate amount thereof, evidently upon the theory that the money stolen by Bayliss from the bank was the act of an assistant superintendent of the defendant and that therefore the defendant should make good the amount of said checks to the bank.

The bank seemed to have made no effort to learn whether or not the indorsements of the payees' names were original and genuine. The bank purchased the checks, placing the amount thereof to the credit personally of Bayliss, evidently assuming the indorsements to be genuine upon Bayliss' indorsement of the checks under the forged names of the payees.

This was true save in reference to three particular checks aggregating $1,272.99, which checks were as follows:

Patrick Murtaugh....July      11, 1907.... $258 81
Margaret Burns.....February 14, 1908....   514 18
Bridget Murtaugh...February 17, 1908....   500 00

In each of which cases, the payee named in the check, apparently not being able to write, the indorsement was made with a mark, Bayliss placing his name on the back of the check merely as a witness, not as an indorser.

Fifteen of the checks cashed by the plaintiff and placed to the personal credit of Bayliss were issued by the defendant upon forged proofs of the alleged death of persons insured by the defendant but who had not died.

Four of the nineteen checks were issued by defendant after the actual death, and receipt of due and

proper proofs of death, of the persons upon whose lives defendant had issued policies. Of these four checks last mentioned Bayliss forged the indorsements of the payees and obtained personally the proceeds thereof.

Each of the nineteen checks was sent to Bayliss to deliver to the payee named. He delivered no one of the checks but forged the name of each payee named and indorsed his own name, or witnessed the making of a mark, thus stealing from the bank the money represented by the checks.

Bayliss' method with reference to the fifteen checks issued upon forged proofs of death was thorough and comprehensive to say the least. In these fifteen cases where checks were issued upon forged proofs of death there had been issued to each one of the parties named a policy upon the life of a person living, premiums had been paid upon the policy for a certain time, after which, desiring to cancel the policy, it was surrendered to Bayliss, representing the company. Bayliss paid to these insured persons a small amount as a surrender value, thus securing possession of the policies and of the premium receipt books. The insured in each case was alive. When the policies and premium receipt books were surrendered to Bayliss for cancellation instead of sending them to the company as surrendered and to be cancelled Bayliss forged fraudulent proofs of death of the insured and forwarded such proofs to the company.

These forged proofs of death were accompanied by the original policies, the original premium receipt books, showing payment of premiums to the date of the alleged death. Bayliss furnished to the company:

1. The attending physician's certificate giving the date and cause of death of the insured.

2. The claimant's certificate stating the relationship

to the insured and by what right the amount of the policy is claimed by him.

3. The certificate of identity stating how long he had known the insured, the date of death, and that he had viewed the remains.

4. The certificate of the assistant superintendent, Bayliss, stating the date that he personally viewed the remains.

In cases where the amount of insurance exceeded $500 Bayliss furnished additional forged papers as follows:

1. Affidavit of attending physician, purporting to have been sworn to before a notary public.

2. Affidavit of identification by party who had known the insured five years, stating the date of his death and that the party had viewed the remains; this affidavit also purporting to be sworn to before a notary public.

3. Claimant's certificate that she was the wife of the insured.

4. Certificate of the assistant superintendent, Bayliss. certifying that he had personally viewed the remains.

5. Undertaker's certificate of burial.

Every one of these papers was a forgery. The signature by the notary public, the certificate of the county clerk as to the genuineness of notary's signature, the doctor's, the undertaker's, the friend's, all of them forged.

In return for these papers the company forwarded checks in payment of the policy obligations.

These checks, made in the names of the respective claimants, the plaintiff cashed and placed to the credit of Bayliss individually.

From the amount thus deposited to his credit Bayliss used the money for his own purposes, paying his

own bills, and there is no evidence in the record that the defendant ever received any of this money from Bayliss.

In the cases where there were claimants upon policies existing, where the insured had died, Bayliss did not deliver the checks to the claimants but forged the names of the payees and the bank purchased these checks.

Bayliss suddenly left Cohoes and the employment of the defendant, was thereafter arrested in California, convicted of the crime of forgery and grand larceny in forging the names of the nineteen payees and in stealing the money represented thereby from the bank, and he served the term of his sentence at Clinton prison.

The indorsement made by Bayliss upon sixteen of the checks where he forged the indorsement of the names of the payees was " Ira J. Bayliss, Asst. Supt." This indorsement was made after the forged indorsement of the payee.

When he witnessed what pretended to be the signatures of the payees who were not able to write, but who indorsed with a mark, the form of his witnessing was " Witness: Ira J. Bayliss, Asst. Supt.".

All of the checks thus indorsed by him were deposited by him either in whole or in part to his individual account. Of the aggregate amount of $5,541.57 the bank credited his account with $4,408.66 and Bayliss was paid personally in cash $1,132.91.

The first of the forged checks was presented to the bank by Bayliss December 29, 1906. Prior to this time the deposits by Bayliss consisted mostly of currency. After that time they were largely checks.

He paid from his account from time to time to his superior, the local superintendent of the company at Troy, moneys which he collected from insurance pre-

miums, and these payments were always made by him with checks certified by the bank.

The plaintiff claims that because Bayliss indorsed these checks as assistant superintendent, and that the signature of Bayliss on the back of the checks was genuine and the fact that he deposited the proceeds of the checks in his own personal account in which he had been making deposits of collections of premiums, that these circumstances were assurances on which the bank relied in taking the checks and giving Bayliss credit for them to the amount that they did give him credit and in giving him cash in the amount in which they did give him cash.

The contention of the plaintiff is therefore that because Bayliss, who was known as the assistant local superintendent in Cohoes, and who collected premiums which he transmitted to his superior, the local superintendent in Troy, brought to the bank checks made payable evidently to beneficiaries as death claims upon policies, which checks were drawn to the order of a payee whose signature appeared to be upon the back of the check, that therefore the bank had no responsibility when asked to pay cash to Bayliss personally for such check or to deposit the amount of such check to the credit of Bayliss personally, to inquire and to satisfy itself as to the genuineness of the indorsement of the payee named in the check.

The bank was chargeable with reasonable diligence to see that the signatures were not forgeries. There was no duty on the part of the insurance company to look for forged indorsements of the payees of the checks.

The insurance company was not under duty to compare the indorsements on the checks with the genuine signatures of the payees on file in the office. *Pruden-*

*tial Ins. Co.* v. *National Bank of Commerce,* 177 App. Div. 438.

The first forged check which was presented by Bayliss to the bank for deposit was payable to Mary Poupart for $698. The bank was not obliged to cash the check, and certainly was not obliged to deposit it to the credit of Bayliss personally.

The bank evidently did purchase the check solely upon the responsibility of the indorsement by Bayliss, without ascertaining whether the indorsement of Mary Poupart was genuine.

This same method evidently prevailed with reference to the eighteen other forged checks.

The bank could have taken this paper or not, as it pleased. These checks were taken, as is the general custom and in accordance with the law, relying solely upon the reputed responsibility of the transferers of the paper and its apparent genuineness, and they took it upon that assumption at their peril. *Gallo* v. *Brooklyn Savings Bank,* 199 N. Y. 222.

As was said in *Shipman* v. *Bank of State of New York,* 126 N. Y. 318, the plaintiff bank in each case took these checks without inquiry as to the genuineness of the indorsements and relied entirely upon the responsibility of the person presenting the same for payment, and not in reliance upon anything done or forborne except the fact that the checks bore the indorsement of Bayliss.

The defendant had a right to assume that any bank cashing or handling, or passing along the checks which the defendant had issued in payment of claims, would ascertain with reference to the genuineness of any and all indorsements thereon.

The plaintiff in purchasing these checks obtained no right, title or interest in or to the checks; a forged indorsement does not pass a title to commercial paper,

negotiable only by indorsement. *Citizens National Bank* v. *Importers & Traders Bank,* 119 N. Y. 195.

In the forgeries committed by Bayliss in making false proofs of death, forging the names of the payees and through such instrumentality stealing the money from the plaintiff, he was not acting as agent of the defendant. *Shipman* v. *Bank,* 126 N. Y. 318; *Frank* v. *Chemical National Bank of State of New York,* 84 id. 209.

This is not a case where the loss must fall upon the one of two innocent persons who has enabled the third party to do the injury, because the injury was brought about through the instrumentality of a criminal act. *Nash* v. *Moore,* 165 App. Div. 67.

The rule is laid down in *Critten* v. *Chemical National Bank,* 171 N. Y. 219, that the doctrine of ratification or estoppel has no application when money is stolen from a bank through the bank's contributory negligence.

There is no proof that any of these moneys were paid by Bayliss to his employer. The facts upon the record show that the only moneys paid by Bayliss to the company were premium moneys which Bayliss had actually collected weekly upon policies issued by the company. Such money was received in the usual course of business and in good faith, and for that reason it cannot be pursued by the bank to make good the loss which the bank has sustained through the cashing of the forged checks. *Ball* v. *Shepard,* 202 N. Y. 247.

There was no mistake between the parties to this litigation. There was no privity of contract between them. The bank dealt with Bayliss as an individual and only as such. There was no mistake of dealing between the bank and the insurance company. The checks were not payable to bearer; Bayliss forged the

indorsements of the payees and the bank upon Bayliss' indorsement purchased each check without ascertaining whether the indorsement was genuine or otherwise.

Findings may be submitted in accordance herewith and upon such findings judgment may be entered dismissing the complaint with costs.

Judgment accordingly.