AMERICAN EXCHANGE NATIONAL BANK, Plaintiff, *v.* YORKVILLE BANK OF NEW YORK and CALEDONIAN INSURANCE COMPANY OF EDINBURGH, SCOTLAND, Defendants.

AMERICAN EXCHANGE NATIONAL BANK, Plaintiff, *v.* YORKVILLE BANK OF NEW YORK, Defendant.

Supreme Court, New York Special Term, March, 1924.

**Banks and banking — action to recover amount paid on forged checks — pleadings — liability of collecting bank — warranty of genuineness of indorsement — when defendant bank deemed to have acquired no remedy as against defendant insurance company, maker of checks.**

Certain checks drawn on plaintiff by one of its depositors, the defendant insurance company, came into the hands of the defendant bank through a deposit with

it by one of its depositors and upon presentment the checks were paid by plaintiff to the defendant bank. It was subsequently discovered that the indorsement of the names of the payees of the checks were forged. To a complaint for money had and received seeking to recover the amount of the checks upon the ground that the defendant bank's warranty of prior indorsements had been broken and that it had no title to the checks and had obtained payment thereof from plaintiff under a mistake of fact, the answer of the defendant bank while admitting that when it received payment of the checks they bore its indorsement, put in issue the forgery of the indorsement of the payees, and certain new matter was pleaded, both as affirmative defenses and by way of counterclaim against the defendant insurance company which had been brought in as an additional party defendant. Upon granting plaintiff's motion to strike out the defenses for insufficiency and also upon granting a motion of the defendant insurance company to strike out the new matter upon the ground that it was insufficient to constitute a cause of action or counterclaim, *held*, that the defendant bank having taken the checks solely upon the credit and responsibility of its own depositors, any alleged negligence of the insurance company in failing to exercise due care or diligence in discovering the alleged forgeries and in failing to notify both the plaintiff and defendant bank thereof gave the defendant bank no remedy over against the insurance company.

The alleged negligence of the insurance company being obviously wholly unrelated to the act of the defendant bank in taking the checks, such negligence could not be regarded as the proximate cause of the loss which it or its depositor might sustain nor can it be made the basis of either a defense against the plaintiff or of a cross action or counterclaim against the insurance company.

The extent of the defendant bank's liability to plaintiff is measured solely by the total amount paid by plaintiff to said defendant, based upon its breach of warranty of the genuineness of the indorsement upon the checks preceding its own, upon the faith of which warranty the money was paid to defendant, and section 326 of the Negotiable Instruments Law, which relates exclusively to the liability of a bank to its own depositor, is wholly inapplicable here and affords neither a defense nor the basis of a counterclaim.

CROSS-MOTIONS to strike out defenses set up in answer and counterclaims.

*Cardozo & Nathan* (*Albert Falck,* of counsel), for plaintiff.

*Guggenheimer, Untermyer & Marshall* (*Louis Marshall* and *James Marshall,* of counsel), for defendant Yorkville Bank of New York.

*Patterson, Eagle, Greenough & Day* (*Edward J. Patterson* and *Carroll G. Walter,* of counsel), for defendant Caledonian Insurance Company.

BURR, J. Two motions. This action originally was brought against the Yorkville Bank only. That defendant, in May, 1923, obtained, upon notice to the plaintiff alone, an order bringing in the Caledonian Insurance Company as an additional defendant. The Yorkville Bank subsequently served an amended answer in

which it sets up certain new matter which is pleaded both as defenses to the complaint and "by way of cross-action or counterclaim against the defendant Caledonian Insurance Company." The defendant insurance company now moves to strike out such new matter upon the ground that it is insufficient to constitute a cause of action or counterclaim, and the plaintiff, the American Exchange National Bank, moves to strike out the alleged defenses set up in the answer on the ground that such defenses are insufficient in law on the face thereof. The defendant insurance company is a depositor of the plaintiff and at various times between May 26, 1916, and November 19, 1921, it drew a number of checks, specifically set forth in the complaint, aggregating $10,471.24. Those checks came into the hands of the defendant Yorkville Bank through having been deposited with it by one of its depositors; and said defendant thereupon presented the checks to the plaintiff for payment, and the plaintiff paid them to said defendant. It subsequently was discovered that the indorsements of the payees of said checks were forged, and the plaintiff thereupon brought this action to recover the amount of said checks from the defendant bank upon the ground that in view of the forgeries said defendant's warranty of the prior indorsements had been broken and said defendant had no title to the checks and consequently had obtained the money under a mistake of fact. The defendant bank admits that it presented the checks to the plaintiff and received payment thereof from the plaintiff, and that when so presented the checks bore the indorsement of the defendant. The forgery of the indorsements of the payees is put in issue, however, and the defendant bank further sets up eight affirmative defenses, which, as already stated, are pleaded also as counterclaims against the defendant insurance company. The first defense and counterclaim alleges that, after being genuinely signed by duly authorized officers of the insurance company, the checks were negotiated by an employee of the insurance company to the firm of C. & H. Moller, which firm took the checks in good faith and for value; that C. & H. Moller were depositors of the defendant bank and known to said bank to be reputable and reliable; that C. & H. Moller deposited the checks to the credit of their account with the defendant bank; that the defendant bank collected the checks from the plaintiff and credited the proceeds thereof to the account of C. & H. Moller, which firm subsequently withdrew such proceeds in the regular course of business; that plaintiff rendered monthly statements of account to the defendant insurance company and each month returned all checks paid during the preceding month; that no notice or claim of any forgery or fraud or irregularity was given by the insurance

company to the plaintiff or by the plaintiff to the defendant bank at any time prior to April 1, 1922; and that in the latter part of 1921 the above-mentioned employee of the insurance company died insolvent. It is then alleged that by reason of these facts the plaintiff was discharged from any liability for the payment of any of the checks which were paid prior to April 1, 1921, and that the defendant bank was likewise discharged from any liability to the plaintiff with respect to any checks paid prior to that date. The second defense and counterclaim repeats the foregoing facts and then avers that as to all checks drawn prior to April 1, 1921, the right of the insurance company to maintain an action with respect thereto was barred on April 1, 1922, by virtue of section 326 of the Negotiable Instruments Law. The third defense and counterclaim again repeats the foregoing facts and avers that the insurance company negligently failed to examine the canceled checks returned to it by the plaintiff each month and thereby failed to use due care or diligence in discovering the alleged forgeries and in notifying the plaintiff and the defendant bank thereof, and by reason of such negligence it is estopped from enforcing any liability against either the plaintiff or the defendant bank. The fourth, fifth and sixth defenses and counterclaims again repeat the foregoing facts and aver that by reason of the aforesaid negligence the insurance company is estopped from enforcing any liability with respect to any of the checks which were paid by the plaintiff on or after January 1, 1917, July 1, 1917, and January 1, 1918, respectively. The seventh defense and counterclaim again repeats the foregoing facts and avers that the insurance company drew and prepared the checks in such a careless, improper and negligent manner as to enable its employee to perpetrate the fraud referred to in paragraph 5 of the complaint, *i. e.*, the forgery of the indorsements of the payees; and but for that negligence such forgery could not have occurred and such checks would not have been paid by the plaintiff. The eighth defense and counterclaim avers that this action was brought by the plaintiff " solely for the benefit of the defendant insurance company, pursuant to an agreement or undertaking between them that the insurance company would not seek to enforce any claim or cause of action against the plaintiff arising out of the matter set forth in the first, second, third, fourth, fifth, sixth and seventh affirmative defenses herein contained, and that only in the event that the plaintiff should recover herein against this defendant with respect to any of the matters referred to in the complaint herein was the plaintiff to make any payment whatsoever with respect to any of the transactions set forth in the complaint and in this answer to the insurance company." It is then averred that by

reason thereof the insurance company is the real party in interest and the plaintiff is not entitled to maintain the action. The contention of the defendant Yorkville Bank appears to be that this being an action for money had and received, the right to recover is governed by principles of equity, although the action is at law, and that in such an action where one of two innocent parties standing in equal obligation must suffer through the fraud of a third person, the loss must fall on the person who by his negligence made the loss possible; that the plaintiff bank is not liable to its depositor, the defendant insurance company, because of the negligence of said depositor and especially for the reason that section 326 of the Negotiable Instruments Law provides " no bank shall be liable to a depositor for the payment by it of a forged or raised check, unless within one year after the return to the depositor of the voucher of such payment, such depositor shall notify the bank that the check so paid was forged or raised; " that by reason of the negotiability of the checks issued by defendant insurance company the said defendant owes a duty to the public generally to exercise due care and diligence in the issuance of such checks and that its negligence will work an estoppel against recovery of any loss sustained through the forged indorsements of such checks; that by reason of the negligence of its depositor the defendant insurance company, the plaintiff bank is not liable to such depositor for the payments made to the defendant Yorkville Bank on the checks bearing the forged indorsements and hence suffered no loss and is not entitled to recover from the defendant Yorkville Bank. If the contention of the defendant Yorkville Bank is sound the reliance now placed upon indorsements would disappear and the business of banking would be placed in jeopardy. I believe such contention to be legally unsound and opposed to the great weight of authority. The insurance company is the drawer, the plaintiff is the drawee, and the Yorkville Bank is a third party which obtained possession of the checks and then indorsed and collected them — frequently termed the collecting bank. By drawing the checks the insurance company directed the plaintiff to pay the amounts therein specified to the persons therein named as payees. The Yorkville Bank was free to take those checks or not as it saw fit; and in taking them it relied, not upon anything done by the insurance company, but solely upon the credit and responsibility of its prior indorser (its own depositor C. & M. Moller) and his apparent title to the instruments. *Bank of Commerce* v. *Union Bank,* 3 N. Y. 230, 236; *White* v. *Continental National Bank,* 64 id. 316, 320, 321, 322; *Manufacturers' Bank* v. *Prudential Ins. Co.,* 102 Misc. Rep. 339, 346; *Seaboard National Bank* v. *Bank of America,* 193 N. Y. 26, 32.

When, after taking the checks, the Yorkville Bank indorsed them and presented them to the plaintiff for payment, it thereby warranted that all preceding indorsements were genuine and that it had good title to the checks, and if the indorsements of the payees were forged that warranty was of course broken and it had no title whatever to the checks and consequently no right to collect any money thereon. *Oriental Bank* v. *Gallo,* 112 App. Div. 360, 362; affd., 188 N. Y. 610; Neg. Inst. Law, §§ 42, 115, 116; *Turnbull* v. *Bowyer,* 40 N. Y. 456; *Lennon* v. *Grauer,* 159 id. 433; *Geering* v. *Metropolitan Bank,* 170 App. Div. 751, 753; affd., 225 N. Y. 711; *Seaboard Nat. Bank* v. *Bank of America, supra; New York Produce Exchange Bank* v. *Twelfth Ward Bank,* 135 App. Div. 52. When the checks were presented to the plaintiff for payment its sole duty was to determine the genuineness of the signature of the drawer; as to all other matters, including the genuineness of all indorsements, it was entitled to rely, and obviously did rely, upon the presumptive ownership of the Yorkville Bank as the apparent holder and upon its warranty of every preceding indorsement. *White* v. *Continental Nat. Bank,* 64 N. Y. 316, 320; *Corn Exchange Bank* v. *Nassau Bank,* 91 id. 74, 79. If all the indorsements were genuine, of course, the plaintiff would be entitled to charge the payments to the account of its depositor, the drawer, because in that event the payments constituted literal compliance with the drawer's directions. If, however, the indorsements of the payees were forged, then the payments were not in compliance with the drawer's directions and they constituted not the payment of any money of the drawer, but the payment of the money of the drawee, the plaintiff; and such payments gave the drawee no right to charge the payments to the drawer and did not discharge any part of its indebtedness to the drawer. *General Fire Assurance Co.* v. *State Bank,* 177 App. Div. 745, 750; *Bank of British North America* v. *Merchants' Nat. Bank,* 91 N. Y. 106, 111; *Corn Exchange Bank* v. *Nassau Bank, supra,* 80; *Leather Mfrs.' Bank* v. *Merchants' Bank,* 128 U. S. 26; *United States* v. *Nat. Exchange Bank,* 214 id. 302. A drawee bank which has paid checks the indorsements of which have been forged is thus in the position of having paid out its own money in reliance upon a representation and warranty by the collecting bank that the latter had good title to the checks. Its right, upon discovery of the forgery, to recover the amounts so paid rests, not upon any duty or relation to its depositor, but solely and exclusively upon the ground that the payment was induced by the collecting bank's false warranty. In all such cases the collecting bank has obtained the drawee bank's money without any right thereto. The rights of those two parties are thus wholly

dependent upon their own positions, and it has been repeatedly and expressly held that negligence on the part of the drawer in failing to prevent or discover the forgeries is wholly immaterial and does not constitute a defense to the collecting bank. *Corn Exchange Bank* v. *Nassau Bank, supra,* 75, 76; *Seaboard Nat. Bank* v. *Bank of America, supra,* 32; *N. Y. Produce Exchange Bank* v. *Twelfth Ward Bank, supra; U. S. Mortgage & Trust Co.* v. *Liberty Nat. Bank,* 112 Misc. Rep. 149; affd., 195 App. Div. 890; *Sprague* v. *West Hudson County Trust Co.,* 92 N. J. Eq. 639. It is well settled, too, that identically the same principles which render the collecting bank liable to the drawee bank also give the collecting bank a remedy over against those from whom it received the checks and upon the faith of whose indorsement and responsibility it took them, and those persons likewise have a remedy over against their own prior indorser " until the wrongdoer is finally made to pay." *Bank of Commerce* v. *Union Bank, supra; White* v. *Continental Nat. Bank, supra; Oriental Bank* v. *Gallo, supra.* The chain of liability thus runs back through and according to the chain of indorsements, and in the instant case would embrace the defendant Yorkville Bank's own depositor and prior indorser, C. & H. Moller, from whom and upon whose credit and responsibility it took the checks. The real and underlying reasons why negligence of the drawer constitutes no defense to the collecting bank are that there is no privity between the drawer and the collecting bank (*Corn Exchange Bank* v. *Nassau Bank, supra,* 80) and the drawer owes to that bank no duty of vigilance (*New York Produce Exchange Bank* v. *Twelfth Ward Bank, supra,* 54), and no act of the collecting bank is induced by any act or representation or admission of the drawer (*Seaboard Nat. Bank* v. *Bank of America, supra*), and it follows that negligence on the part of the drawer cannot create any liability from it to the collecting bank, and the drawer thus is neither a necessary nor a proper party to an action by the drawee against such bank. It is quite true that depositors in banks are under the obligation of examining their passbooks and returned vouchers as a protection against the payment by the depository bank of forged checks, and negligence in the performance of that obligation may relieve that bank of liability for the repayment of amounts paid out on forged checks, which but for such negligence it would be bound to repay. A leading case on that subject is *Morgan* v. *U. S. Mortgage & Trust Co.,* 208 N. Y. 218. That case, however, and the cases of which it is a type, relate to forged signatures of the drawer, which signatures the bank, and also the depositor are bound at their peril to know. In the case at bar the signatures of the drawer were genuine. It is the indorsements of the payees

that were forged. And the depositor is not under the duty of looking for forged indorsements. *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219, 228; *Metallurgical Securities Co.* v. *Mechanics & Metals Nat. Bank,* 171 App. Div. 321, 323; *Spiegel Realty Corp.* v. *Gotham Nat. Bank,* 121 Misc. Rep. 547. But, entirely apart from the distinction between the depositor's duty with respect to the signatures and the indorsements of his checks, and even assuming that his duty of examination extends to both, it is settled beyond question that negligence on the part of the depositor in failing to make that examination is not a defense to his bank except to the extent that such negligence has caused loss to the bank, and such loss is not caused where his bank has a remedy over against the bank to which the checks were paid. The *Critten Case, supra,* is directly in point and controlling upon this phase of the question. It was an action by a depositor against his own bank. On twenty-four separate occasions, between September, 1897, and October, 1899, one Davis, a clerk of the plaintiffs, erased the names of payees of checks signed by the plaintiffs and made them payable to cash and also raised the amount of the checks. He would then draw the money on the check from the defendant. On one occasion, however, he did not collect the altered check from the defendant, but deposited it to his credit in another bank. The defendant charged negligence on plaintiffs' part, both in the manner in which the checks were drawn and in the failure to discover the forgeries when the passbook was balanced and the vouchers returned. The court held that the change of the checks by their clerk was something against which the plaintiffs could not be expected to guard and that the referee was right in finding that there was no negligence in signing the checks (p. 224). The court then considered the duty of the plaintiffs to examine their canceled vouchers and held that a depositor owes his bank that duty (pp. 225–228). It specifically stated, however, that the depositor owes his bank no duty in regard to the discovery of the genuineness of the indorsements (p. 228). It further specifically held that the depositor's liability for neglect of his duty to examine and verify his account is limited to the damages sustained by the bank in consequence of such neglect (p. 228), and with respect to the one instance in which plaintiffs' clerk, instead of having the check cashed by the defendant, had deposited it to his own credit in another bank, the court said (p. 229): " In the present case a check altered by Davis from the sum of $22 to $622 was paid by the defendant to the Colonial Bank, in which Davis had deposited it. Against that bank the defendant has ample recourse. If it were to be held that the plaintiffs are estopped from denying the genuineness of that check as against the

defendant, the latter could have no claim against the Colonial Bank, nor is it clear that the plaintiffs would have any direct right of action against that bank. The Colonial Bank took the check solely on the responsibility of Davis. To it the plaintiffs owed no duty. If the plaintiffs and the defendant had never settled their accounts the Colonial Bank could have had no complaint against either party for that cause. A rule which might operate to relieve that bank from the liability it assumed when it collected an altered check merely because the plaintiffs failed in their duty, not to it, but to a third party, should not be upheld." In view of that language it is obvious that if the plaintiff here had attempted to charge the checks in question against the insurance company and had then attempted, in a suit brought against it by the insurance company, to set up the defense of negligence, it could have been met with the answer that it had suffered no damage as a result of that negligence, for the reason that it had " ample recourse " against the Yorkville Bank, which had taken the checks solely on the responsibility of its own depositor and had not been influenced by any act or omission of the insurance company, which, in fact, owed that defendant no duty. Precisely that answer was made to a drawee bank's plea of negligence on the part of its depositor in *Kearny* v. *Metropolitan Trust Co.,* 110 App. Div. 236, 239; affd., 186 N. Y. 611. Likewise, in *Metallurgical Securities Co.* v. *Mechanics & Metals Nat. Bank, supra,* the Appellate Division said (p. 323): " Furthermore, the law is well settled that a party cannot be charged with a failure to notify a bank of errors in an account unless the bank had been actually damaged by such failure." The *Critten Case, supra,* is peculiarly emphatic in showing a definite intent on the part of the Court of Appeals to lay down a rule by which the Yorkville Bank or any bank similarly situated would be prevented from relieving itself from the liability it assumed when it collected these checks by setting up negligence on the part of the drawer as a defense or by way of estoppel. As specifically stated by that court, the drawer of the checks owed no duty to that defendant. On the contrary, the Yorkville Bank took the checks upon the responsibility of its own depositor. The alleged negligence of the insurance company would not constitute any defense to a claim by it against the plaintiff if the plaintiff had attempted to charge the payments on these checks to its account for the precise reason that the plaintiff, despite that negligence, has a remedy against the Yorkville Bank upon its guaranty of the indorsements, and, therefore, sustained no loss in consequence of the negligence. It follows that that alleged negligence gives the Yorkville Bank no remedy over against the insurance company.

·An attempt to assert such a remedy was made in *Manufacturers' Bank* v. *Prudential Ins. Co.*, 102 Misc. Rep. 339, but the effort completely failed. The plaintiff in that case stood in the position of the Yorkville Bank. An employee of the defendant had forged the indorsements of the payees of various checks and deposited them to the credit of his personal account with the plaintiff, and the plaintiff had collected the checks from the drawee and paid over the proceeds thereof to its depositor. Upon discovery of the forgeries it sued the drawer to recover its loss — just as the Yorkville Bank claims to be entitled to recover from the drawer — but its complaint was dismissed. The negligence here alleged obviously was wholly unrelated to the act of the Yorkville Bank in taking the checks. Such negligence could not be regarded as the proximate cause of the loss which it or its depositor may sustain, and for that additional reason it cannot be made the basis of either a defense against the plaintiff or a cross-action or counterclaim against the insurance company. *Ehrich* v. *Guaranty Trust Co.*, 194 App. Div. 658, 664; affd., 233 N. Y. 637; *Saugerties Bank* v. *Delaware & Hudson Co.*, 236 id. 425. See, also, *Spiegel Realty Corporation* v. *Gotham Nat. Bank*, 121 Misc. Rep. 547; *Caledonian Ins. Co.* v. *Nat. City Bank*, 208 App. Div. 83, revg. 120 Misc. Rep. 804. Section 326 of the Negotiable Instruments Law relates exclusively to the liability of a bank to its own depositor. The theory upon which it has been pleaded in this action undoubtedly is that by its terms the plaintiff's liability to the insurance company was limited to the checks which were returned within one year prior to the time notice of the forgeries was given, and consequently the Yorkville Bank's liability to the plaintiff is likewise so limited. Even if that theory were correct, the defense based on the statute would be a defense only, and could not constitute a basis of liability in favor of the Yorkville Bank against the insurance company and is insufficient as a counterclaim. It is insufficient also as a defense. The plaintiff's claim against the Yorkville Bank is not based upon or derived from or measured by any pre-existing liability of the plaintiff to the insurance company. Its claim is direct and not derivative. It is based upon the Yorkville Bank's breach of warranty of the genuineness of the preceding indorsements, upon the faith of which warranty the plaintiff paid the money to it, and the extent of the Yorkville Bank's liability to the plaintiff is measured solely by the total amount paid. The statute referred to has no reference whatever to the relations existing between a drawee and a collecting bank. The perpetrator of the forgeries got $10,471.24 from C. & H. Moller because Moller believed he had title to instruments worth that

amount of money. Moller, by guaranteeing the validity of their title, got $10,471.24 from the Yorkville Bank, and the Yorkville Bank by a further guaranty of title obtained a similar amount from the plaintiff because the plaintiff believed the Yorkville Bank had title to instruments worth that amount. It turns out that the title was not good, and consequently the plaintiff cannot charge the payments to the drawer and the plaintiff is out $10,471.24 of its own money. The plaintiff is suing to recover its own money from the Yorkville Bank and is not recouping a loss which it has suffered in consequence of a claim against it by the insurance company for having paid a forged or raised check. Section 326 is hence wholly inapplicable and affords neither a defense nor the basis of a counterclaim. *Bank of British North America* v. *Merchants Nat. Bank, supra,* 111; *Corn Exchange Bank* v. *Nassau Bank, supra,* 80; *General Fire Assurance Co.* v. *State Bank, supra.* The statute would not constitute a defense even in an action by the insurance company against the plaintiff because the statute is limited by its express terms to liability for the payment of " a forged or raised check." Here it is not the checks which were forged, but the indorsements of the payees. The difference between a forged or raised check and a check on which the indorsement of the payee has been forged is manifest and fundamental. A drawer knows his own signature and is in a position to tell by inspecting the check whether or not it is genuine. He knows, also, whether or not it has been raised. But a drawer very rarely knows the signature of the payee and consequently is in no position to tell whether the indorsements upon the checks are genuine or not. For that reason the statute is properly limited to checks on which the signature of the drawer has been forged and cannot be invoked as a protection to the drawee bank with respect to forged indorsements. If it were true, as alleged in the answer, that the plaintiff is not the real party in interest, that fact obviously would constitute, at best, a mere defense to its claim, and would not constitute any basis of liability in favor of the Yorkville Bank against the insurance company. The eighth defense and counterclaim is thus clearly insufficient as a counterclaim or as regards any claim against the insurance company. If the answer simply had alleged that the plaintiff is not the real party in interest, very probably the defense would have been impregnable upon a motion to strike out. But as the pleader has set forth the basis of his conclusion that the plaintiff is not the real party in interest the court properly may look to the pleadings as a whole in order to determine whether or not that conclusion is justified. Thus looking at the pleadings, the insufficiency of the defense is apparent, for the defense clearly rests upon the incorrect theory

that the plaintiff's claim against the Yorkville Bank is derived from or based upon a claim of the insurance company against the plaintiff. The liability of the paying bank to its depositor and the liability of the collecting bank to the paying bank are entirely separate and distinct and have no relation to and do not depend upon each other. It consequently follows that even a formal release from a depositor to his own bank would have no effect whatever upon the claim of that bank against the person who obtained that bank's money " without right and on the exhibition of forged title as genuine." *Bank of Commerce* v. *Union Bank, supra,* 237. A party is to be regarded as the real party in interest whenever a payment to him would protect the defendant from the claims of third persons. *St. James Co.* v. *Security Trust Co.,* 82 App. Div. 242, 243; affd., 178 N. Y. 560; *Peoples' National Bank* v. *Rice,* 149 App. Div. 18; *General Investment Co.* v. *Interborough R. T. Co.,* 200 id. 794, 802; affd., 235 N. Y. 133. The motion of the plaintiff to strike out the defenses set up in the answer of the defendant Yorkville Bank is granted, with ten dollars costs. The motion of the defendant Caledonian Insurance Company to strike out the counterclaims set up in the answer of the defendant Yorkville Bank is granted, with ten dollars costs. Settle order on notice.

Ordered accordingly.