FRANKLIN SQUARE NATIONAL BANK, Plaintiff, *v.* GREAT ATLANTIC BUILDING MATERIAL SUPPLY CORP. et al., Defendants.

Supreme Court, Special Term, New York County, February 25, 1946.

*Goldman & Jobrack* for Great Atlantic Building Material Supply Corp., Montrose Industrial Bank, Manufacturers Trust Company, and Federal Reserve Bank, defendants.

*Edwin R. Wolff* for plaintiff.

*Samuel R. Edelstein* for Frank Loggia, defendant.

SHIENTAG, J.   This is a motion by the defendants, other than Frank Loggia, to dismiss the complaint for insufficiency on its face.

Defendant Loggia applied to the plaintiff bank on behalf of the Hamilton Ridge Corporation for an F.H.A. loan.  Believing that Loggia was, as he represented himself to be, the president of the corporation, plaintiff gave Loggia cashier's checks made to the corporation as payee amounting to $2,500, and received in return a promissory note in the amount of $2,874.50,

to which Loggia signed the corporation's name. The notes also bore the signatures of Loggia and another individual. Loggia's acts were entirely unauthorized. The checks were not received by the corporation. Instead, Loggia indorsed the corporation's name on the checks and transmitted them to defendant Great Atlantic. The checks were indorsed by Great Atlantic and deposited with defendant Montrose, which indorsed and forwarded the checks to defendant Manufacturers Trust, which in turn indorsed and forwarded them to defendant Federal Reserve Bank. Plaintiff, not yet aware of the fraud and believing all prior indorsements to be genuine, paid the amount of the checks to Federal Reserve Bank, and the proceeds were remitted up the line to defendant Great Atlantic. No part of the loan has ever been repaid to plaintiff.

The original complaint in the action was dismissed, with leave to amend. Defendants contend that in spite of amendments made to meet the suggestions of the learned Justice at Special Term, the complaint still fails to show that the plaintiff sustained any loss, since plaintiff still holds the note, on which it is entitled to payment from the two individuals if not from the corporate maker.

Plaintiff urges the general proposition that indorsers warrant the genuineness of previous indorsements. It argues that " an immediate right of action accrued " when the defendants received the proceeds of the checks and that it is under no duty to sue on the promissory note.

A drawee may recover money paid out on a check which bears a forged indorsement. There is a conflict of judicial opinion as to whether the recovery is based on the warranty principle to which plaintiff calls attention, the liability of indorsers as guarantors runs only to holders in due course (Negotiable Instruments Law, § 116), or whether recovery is based upon principles of quasi contract. (Cf. *American Exchange Nat. Bank* v. *Yorkville Bank,* 122 Misc. 616, affd. 210 App. Div. 885 [1st Dept.], with *Dousmanis* v. *Colonial Bank,* 134 Misc. 472 [App. Term, 1st Dept.].) But there is no question that the recovery may be had (*Corn Exchange Bank* v. *Nassau Bank,* 91 N. Y. 74; *Canal Bank* v. *Bank of Albany,* 1 Hill 287). The fact that a cashier's check is involved does not alter the application of the rule (*Moler* v. *State Bank of Bigelow,* 176 Minn. 449; *First Natl. Bank* v. *Produce Exchange Bank,* 338 Mo. 91).

Defendant's position is that the rule should not be applied where there is no showing of loss. The very nature of the

liability, however, renders irrelevant the question of loss (apart from the loss involved in the fact that the drawee pays out money on the check). The drawee "is suing to recover its own money * * * and is not recouping a loss * * *." (*American Exchange Nat. Bank* v. *Yorkville Bank, supra*, p. 626). "The money remains, in equity and good conscience, the property of the payer, and may be recovered back by him, without any previous demand, as money had and received to his use." (*Leather Manf.' Bank* v. *Merchants' Bank*, 128 U. S. 26, 35). The foregoing quotations, it will be noted, are from opinions which adopt divergent views as to whether warranty or quasi contract furnishes the basis for liability.

Apparently the question whether a showing of loss is necessary has arisen infrequently. In *American Exchange Nat. Bank* v. *Yorkville Bank* (122 Misc. 616, *supra*) plaintiff's depositor drew checks which were fraudulently indorsed and ultimately deposited in the defendant bank, which presented them to plaintiff and received payment. In deciding in plaintiff's favor, the court struck out defenses based on the contention that the plaintiff, for various reasons, was not liable to its depositor and therefore suffered no loss. The decision was based upon the double ground that the plaintiff was liable to its depositor and that, in any event, the question of loss was not material. On similar facts, the court in *Clearfield Bk.* v. *Madera Bk.* (87 Pa. Superior Ct. 564, 568) affirmed a judgment for the drawee bank, rejecting the point "that since the bank, after paying the check out, marked it ' paid ' and charged it against the account of the drawer and has never credited it in the said account, it was not in a position to bring suit." Courts applying the Statute of Limitations in such a situation, while dealing with a different problem, emphasize the nature of the liability by pointing out that it arises "immediately" upon the drawee's payment on the forged instrument (*Leather Manf.' Bank* v. *Merchants' Bank*, 128 U. S. 26, *supra; Mount Vernon Trust Co.* v. *Federal Reserve Bank*, 267 App. Div. 882).

The basic theory being what it is, the fact that a cashier's check is involved would not seem to make any difference in the application of the principle that loss is immaterial and in *First Natl. Bank* v. *Produce Exchange Bank* (338 Mo. 91, *supra*) it was so held. Wilson, an office manager for several construction companies, presented checks of the companies to plaintiff bank and in return obtained cashier's checks made out to Edgar, a superintendent of one of the companies. Wilson indorsed the checks to himself and signed Edgar's name.

Edgar remained ignorant of the entire transaction. Defendant was a subsequent indorser. No loss was pleaded or proved. Defendant contended, among other things, that plaintiff was insured by Lloyd's of London and had received a compromise settlement from Lloyd's on what it had paid out. The court explicitly rejected this contention and gave judgment for plaintiff, saying (p. 100), " The suit is to recover the money, and is not dependent upon whether a loss will eventually accrue to plaintiff, nor is the suit based upon the checks."

The ultimate question is, who shall pursue the forger? Defendants are subsequent indorsers and plaintiff is drawee, and this distribution of roles would, under the general principles affecting negotiable instruments, put the burden upon defendants. The fact that in this case the forger deceived plaintiff as well as defendants should not alter the operation of these principles. The underlying policy consideration in this field of law is ease in ascertaining the rights and liabilities which flow from dealings in commercial paper. There is thus an initial presumption against the modification and complication of general rules in order to meet what are thought to be the needs of particular situations. The rules should certainly not be varied in the absence of compelling reasons. The possibility that plaintiff's carelessness may have been as great as or greater than that of any indorser does not present such a reason. The rule that loss is irrelevant should be applied here as well as in the kindred situations described above.

The motion to dismiss the complaint is denied. The moving defendants may have ten days after service of a copy of the order hereon, with notice of entry, within which to serve their answers.