TRAVELERS INDEMNITY COMPANY, Plaintiff, *v.* CHESTER SZYMANSKI, Doing Business as ONE STOP FOOD MARKET, et al., Defendants.

Supreme Court, Special Term, Erie County, December 30, 1954.

Motion to strike out affirmative defenses as insufficient in law.

*Ogden R. Brown* and *Thomas J. Kelly* for plaintiff.

*Todd G. Tiebout* and *John J. Clarke* for Federal Reserve Bank of New York, defendant.

*William J. O'Connor* for Marine Trust Company of Western New York, defendant.

*W. La Verne Baldwin* for Chester Szymanski, defendant.

Halpern, J. The plaintiff sues as the assignee of the Manufacturers and Traders Trust Company (hereinafter referred to as Manufacturers) to recover the funds which Manufacturers paid out, upon the presentation to it of a check dated January

20, 1950, drawn upon it by the John D. Wood Products, Inc. (hereinafter referred to as Wood), payable to the order of one B. Topolski.

It appears that the indorsement of the payee's name had been forged by one of Wood's employees and the check had been cashed for him by the defendant Szymanski, who had thereafter indorsed it and deposited it in his account in the State Trust Company of North Tonawanda. (State Trust Co. was subsequently merged into the defendant Marine Trust Co. and will hereinafter be referred to as Marine.) On March 6, 1950, Marine indorsed the check by a rubber stamp containing, among other things, the legend "Prior endorsements guaranteed" and transmitted the check to the defendant Federal Reserve Bank (hereinafter referred to as Reserve) which in turn placed a similar stamp upon the back of the check and forwarded it to Manufacturers for payment. Manufacturers paid the amount of the check to Reserve and Reserve in turn paid over the funds to Marine.

Manufacturers in regular course debited the amount of the check to the checking account maintained by Wood and thereafter returned the check to Wood. Wood apparently did not discover the forgery for more than two years after the return of the check; at any rate, it did not notify Manufacturers of the forgery within two years and its claim against Manufacturers was therefore barred by section 43 of the Negotiable Instruments Law. This section reads as follows: "§ 43. *Forged or unauthorized endorsements.* No national bank or banking organization as defined in the banking law shall be liable to a depositor for the payment by it of a check bearing a forged or unauthorized endorsement unless, within two years after the return to the depositor of the voucher of such payment, such depositor shall notify the bank that the check so paid bore such forged or unauthorized endorsement."

When Wood discovered the facts, it presented its claim to the plaintiff, the Travelers Indemnity Company, which had issued a fidelity bond covering the employee who had forged the indorsement and the indemnity company paid the loss and thereupon became subrogated to Wood's rights. It brought an action against all three banks and against Szymanski. The plaintiff's action against Szymanski, Marine and Reserve was abortive, because, under the settled New York rule, Wood, to whose position the plaintiff had succeeded, had no right as the drawer of the check to maintain an action against the indorsers of the check (*General Fire Assur. Co.* v. *State Bank,*

177 App. Div. 745; *Trojan Pub. Corp.* v. *Manufacturers Trust Co.*, N. Y. L. J., May 15, 1947, p. 1914, col. 5, affd. 273 App. Div. 843, affd. 298 N. Y. 771).

When these authorities were brought to the plaintiff's attention, the plaintiff entered into negotiations with Manufacturers and procured from it an assignment of its cause of action as the drawee of the check against the indorsers. This assignment was set up in a supplemental complaint and is now the basis of the action. Manufacturers was dropped as a defendant in the supplemental complaint.

Szymanski, Reserve and Marine have interposed answers setting up two affirmative defenses: the first in substance alleges that, in view of the fact that Wood had failed to give notice to Manufacturers within two years, Manufacturers was no longer liable to Wood and therefore it had suffered no loss by reason of the payment of the check and hence it had no cause of action which it could assign to the plaintiff. The second affirmative defense is in substance that the drawer of the check intended it to be payable to a fictitious person and, as a result, it was in effect payable to bearer and the genuineness or lack of genuineness of the indorsement of the payee's name was therefore immaterial.

The plaintiff has moved to strike out the two affirmative defenses on the ground that they are insufficient in law. I have concluded that the motion must be denied.

The first defense must be held to be sufficient on its face upon the present state of the pleadings. So far as appears from the pleadings, the situation at the time of the assignment by Manufacturers to the plaintiff was this: Manufacturers had reimbursed itself for the amount paid on the check from the account of its depositor and the depositor had lost the right to compel a restoration of the funds by the lapse of the two-year period under section 43 of the Negotiable Instruments Law. So far as appears, Manufacturers had never waived the bar of this section. The assignment to the plaintiff did not constitute a waiver of section 43. The assignment only transferred whatever cause of action Manufacturers may have had and, if it had no cause of action, the assignee took nothing.

If Manufacturers had elected to waive section 43 and to recredit Wood's account with the amount of the check, a different situation would have been presented. There is authority that in that event Manufacturers, or its assignee, could have recovered against the collecting banks (and Szymanski). It has been held that, if the drawee bank voluntarily elects to

waive section 43 and to recredit the drawer's account, it may maintain an action against the collecting banks to recover the money paid out upon the check (*National Sur. Corp.* v. *Federal Reserve Bank of N. Y.,* 188 Misc. 207, affd. 188 Misc. 213, motion for leave to appeal to the App. Div. First Dept., denied [unreported]). The court held that the bar of section 43 is available only to the drawee bank and, if the drawee bank elects to waive it, the collecting banks have no right to raise it. It may incidentally be noted that in 1949, an effort was made to extend the provisions of section 43 so as to bar a recovery against *any bank* " for the payment, endorsement or guarantee of prior endorsements by it of a check bearing a forged or unauthorized endorsement " unless notice was given to the bank within two years after the return of the check to the drawer. The bill was passed by the Legislature (Assembly Int. 1345, Pr. 1383) but vigorous objection was interposed by the committee on State legislation of the Association of the Bar of the City of New York in a memorandum submitted to the Governor in opposition to the bill (Bulletin of Comm. [1949], Report No. 114, p. 347) and the Governor vetoed the bill.

For the purpose of this decision, I shall assume that the *National Surety* case is sound. Under the holding of that case, the drawee bank may, if it wishes, elect to waive the defense under section 43, and recredit its depositor's account or allow the depositor to obtain a judgment against it for the amount of the check or, in some other way, recognize a definitive liability to its depositor for the amount of the check, and then proceed against the collecting banks. It may elect to pursue this course in order to retain the good will of its customer, or to maintain friendly business relations with it, or for any other reason satisfactory to it, and the collecting banks have no right to question the drawee bank's decision or the motives which prompted it. This does not amount to the making of a gift by the drawee bank, at the expense of the collecting banks. Despite the fact that the two-year statute has run, the fact still remains that the charge to the depositor's account was an improper one and the drawee bank's election voluntarily to rectify the wrong cannot properly be characterized as a gift. The drawee bank has the right to refuse to avail itself of the bar of section 43 and to recognize its moral obligation to restore what had been wrongfully taken from the depositor's account (cf. 1 Williston on Contracts, §§ 150, 160–163, and Restatement, Contracts, §§ 85–88).

The difficulty with the plaintiff's position in the present case is that the drawee bank has never taken any action, indicating that it desired to waive section 43 and to assume liability to its depositor. The plaintiff argues that this is immaterial — that the drawee bank had paid out its own funds upon the check bearing the forged indorsement and that it is entitled to recover the funds so paid out, regardless of liability or nonliability to its depositor. It is true that in the first instance the funds which were paid out by the drawee bank were its own (*American Exch. Nat. Bank* v. *Yorkville Bank of N. Y.,* 122 Misc. 616, affd. 210 App. Div. 885; *Franklin Square Nat. Bank* v. *Great Atlantic Bldg. Material Supply Corp.,* 186 Misc. 524, affd. 270 App. Div. 930, affd. 296 N. Y. 644) but it must be recognized that, upon the basis of the check bearing the forged indorsement, the drawee bank had reimbursed itself out of its depositor's account. So long as the two-year period had not run, the reimbursement might be said to be a tentative one, subject to being wiped out by a demand for restoration by the depositor. But, after the two-year period had run, the reimbursement was no longer tentative and the drawee bank had no right to maintain an action to recover from the collecting banks, unless it took some affirmative step to reverse the effect of the reimbursement which it had obtained from its depositor's account.

If this were not insisted upon as a condition precedent, the drawee bank might obtain a windfall by recovering from the collecting banks and then avoiding repayment to its depositor by taking advantage of the defense available to it under section 43 of the Negotiable Instruments Law.

There are two basic theories upon which a drawee bank may recover from those who have received the proceeds of a check bearing a forged indorsement. Under neither theory may a recovery be had, after the running of the two-year period under section 43, without a prior recredit of the depositor's account or its equivalent. One theory is that the money had been paid by the drawee bank under a mistake of fact, in misreliance upon the representation by the one presenting the check, that he had good title to it. This is a quasi-contractual theory, which allows a recovery in order to prevent the unjust enrichment of the defendants (Britton on Bills and Notes, § 139, pp. 641–645). Certainly a recovery will not be allowed on that theory, if the recovery will itself result in an unjust enrichment of the plaintiff (cf. *Matter of Rousos,* 195 Misc. 451; 195 Misc. 959). The other theory upon which a drawee bank may recover is that the collecting bank guaranteed the prior indorsements and should

be held liable for damages for breach of its guarantee. This is the only theory upon which a bank, which had acted as an agent in collecting the proceeds of the check, may be held liable after it has remitted the proceeds to its principal in good faith (*National Park Bank* v. *Seaboard Bank,* 114 N. Y. 28; Restatement, Restitution, §§ 142, 143). Under this theory, nominal damages could possibly be recovered for the breach, regardless of the situation between the drawee bank and its depositor, but substantial damages could not be recovered if the two-year period had run under section 43 and the drawee bank had taken no steps to reverse the transaction by which it had reimbursed itself from its depositor's account. (Cf. *Burt* v. *Dewey,* 40 N. Y. 283; *McGiffin* v. *Baird,* 62 N. Y. 329; *O'Brien* v. *Jones,* 91 N. Y. 193, and 1 Clark on New York Law of Damages, § 302.)

In this case, it may be argued that no windfall to the drawee bank would result from a recovery against the defendants because the drawee bank has assigned its cause of action to the Indemnity Company, which has succeeded to the rights of the depositor, and which is justly entitled to the proceeds of any recovery. But the assignment cannot be given the effect of creating a cause of action, if the assignor had none. The fact that there are strong equities in favor of the person who happens to be the assignee does not alter the legal situation. The crucial question is whether the assignor had a valid cause of action in its own favor at the time it made the assignment and the drawee bank had none, in the absence of a recredit to the depositor's account or its equivalent.

It is possible that, by an involved series of transactions, the plaintiff could have acquired a good cause of action in this case. The drawee could have recredited its depositor's account and then assigned its cause of action against the defendants to the plaintiff indemnity company in consideration of the repayment to it of the amount which it had recredited to its depositor's account. This would have left the parties in the same situation financially as they now are, but the legal situation would have been a very different one. We cannot read into the simple assignment pleaded in this case, the whole series of steps which the parties would have had to take in order to vest in the plaintiff a valid cause of action against the defendants.

Upon analysis, it will be found that the holding in the *National Surety* case (*supra*), is entirely consistent with the conclusion here reached, although that may not appear upon a first reading of the case. The Surety Company in that case had insured both the depositor, the City of New York, and " any bank in which

it carried an account '' against any loss '' sustained through payment of any instrument drawn by the city upon which the signature of any indorser had been forged ''. A check bearing a forged indorsement had been paid by the drawee bank and the check in due course had been returned to the city. More than two years later, the city discovered the forgery and notified the drawee bank of it but the city's right to recover from the drawee bank was, by that time, barred by section 43. The Surety Company paid the loss and the drawee bank assigned its cause of action against the collecting banks to the Surety Company. In view of the broad coverage of the bond, the Surety Company must be deemed to have paid the loss on behalf of the drawee bank; hence the drawee bank was in the position of having repaid the amount of the check to the city. It therefore had a complete cause of action to assign to the Surety Company. Throughout its opinion in the *National Surety* case, the court referred to the payment to the city as having been made by the drawee bank; it was upon that basis that the court held that the Surety Company, as the assignee of the drawee bank, had the right to recover from the collecting bank. (188 Misc. 207, 209, 211.)

Professor Simpson of the New York University Law School has commented upon the *National Surety* case as follows : '' The objection that the rule may result in unjust enrichment of a drawee in the case where the latter has already recovered from the holder and thereafter resists the drawer's claim for recredit by pleading the two year statute, is removed by the fact that prior recredit of the drawer's account is a condition precedent to the right of the drawee to recover substantial damages from the holder for breach of the guaranty of prior indorsements '' (23 N. Y. U. L. Q. Rev., 735).

See generally, '' Allocation of Losses from Check Forgeries '' (62 Yale L. J., 417).

The plaintiff also relies upon the statement in *Fallick* v. *Amalgamated Bank of N. Y.* (232 App. Div. 127, 130), to the effect that '' The liability of the collecting bank to repay the moneys paid out on forged indorsements which were guaranteed by the collecting bank to the depositary bank is absolute, and not in any wise dependent upon the liability of the depositary bank to its depositor ''. But this statement must be read in the context of the facts of the *Fallick* case. In that case, the depositor brought an action against the drawee bank to recover for checks bearing forged indorsements improperly charged to its account. The drawee bank brought in the collecting banks, asserting that

they were liable over to it for the plaintiff's claim. The case arose before the enactment of section 43 but even at that time a drawee bank might escape liability to its depositor if it could show that it had been prejudiced by the negligence of the depositor in failing to discover the forgery and to notify the drawee of it promptly. The drawee bank declined to set up the defense of negligence and the collecting banks took the position that they could not be held liable unless the drawee set up all its available defenses against its depositor. The court said (pp. 129–130): "The impleaded defendant * * * has no legal right to compel the original defendant to set up any defense, or even a denial as against the plaintiffs, merely for the benefit of the defendant impleaded. If the Amalgamated Bank of New York (the drawee bank) wishes to forego defenses which it might have against the plaintiff * * * because it wishes to waive them and rely on its remedy against the collecting bank which guaranteed the indorsements of the payees which turned out to be forgeries, the impleaded bank is in no legal position whereby it may demand that the depositary bank be compelled to interpose a defense; or upon its failure so to do, that it be held liable without recourse to the indorsement liability of the collecting bank." It was in this connection that the court made the statement quoted above, upon which the plaintiff relies. In saying that the liability of the collecting bank was in noway dependent upon the liability of the depositary bank to its depositor, the court merely meant to indicate that the collecting bank could not take advantage of a defense which the drawee bank had elected to waive. There is no suggestion in the *Fallick* case that, if the drawee bank had actually escaped liability by establishing the negligence of its depositor, it could nevertheless have obtained a windfall by recovering from the collecting bank.

(See, also, *Halsey* v. *Bank of New York & Trust Co.*, 270 N. Y. 134, and *Bank of New York* v. *Public Nat. Bank & Trust Co.*, 195 Misc. 812, 821, affd. without opinion 275 App. Div. 932, affd. without opinion 301 N. Y. 503.)

The defendants urge this court to go further and to reject the doctrine of the *National Surety* case and to hold that even if Manufacturers had elected to waive section 43 and had recredited its depositor's account, it or its assignee still could not recover against the defendants. I do not agree with the defendants' contention but, upon my analysis of this case, it is unnecessary for me to deal with it. Even upon the assumption that the holding of the *National Surety* case is sound, I find that the plain-

tiff has not brought itself within it. The motion to strike out the first affirmative defense must therefore be denied.

The second affirmative defense must also be held to be sufficient in law. That defense rests upon the claim that the check was in effect payable to bearer and that therefore the forgery of the indorsement was of no materiality.

It is well settled that where the maker of a check makes it payable to one who has no interest in the check and who is not intended by the maker to have any interest, the check is payable to bearer within the meaning of subdivision 3 of section 28 of the Negotiable Instruments Law. The knowledge and intent of the person authorized to sign is controlling (*Phillips* v. *Mercantile Nat. Bank of City of N. Y.,* 140 N. Y. 556; *Trust Co. of Amer.* v. *Hamilton Bank of N. Y. City,* 127 App. Div. 515; *Hackensack Trust Co.* v. *Hudson Trust Co.,* 119 Misc. 689, affd. 207 App. Div. 897; *National Sur. Corp.* v. *Federal Reserve Bank of N. Y.,* 161 Misc. 304, affd. 250 App. Div. 754).

It is alleged by the defendants in the second affirmative defense that the officer who drew the check on behalf of the drawer did not intend that the named payee should have any interest in the check or the proceeds thereof. If this is true, the check would in effect be one payable to bearer. The plaintiff counters with the assertion that the check required two signatures and that it was not only signed by the faithless officer who subsequently forged the indorsement, but it was also signed by another officer who, it is claimed, was unaware of the intention of his fellow officer, and that therefore the check is not to be deemed one payable to bearer (*United States Fidelity & Guar. Co.* v. *National City Bank of N. Y.,* 284 N. Y. 651). This raises a question of fact which can be resolved only upon the trial.

The motion to strike out the affirmative defense is denied, without costs.

Submit order accordingly.